STATE *ex rel.* BENITO GONZALES

*v.*

HOWARD W. WILT, *Sheriff, etc., et al.*

(No. 14365)

Decided June 26, 1979.

*Steven M. Askin, Radosh & Askin* for Wilt, et al.

*Chauncey H. Browning,* Attorney General, *and Pamela Dawn Tarr,* Assistant Attorney General, for State.

CAPLAN, CHIEF JUSTICE:

This is an appeal from a judgment of the Circuit Court of Jefferson County in a habeas corpus proceeding instituted in that court by the appellant, Benito Gonzales. That proceeding was instituted to test the legality of his arrest under the Governor's rendition warrant and, upon the relator's motion, was continued to September 22, 1978. After a hearing on that date, during which the only testimony was that of the petitioner, the court denied the relief sought and remanded said petitioner to the custody of the State of Texas. A stay of that order was granted to enable an appeal to this court.

On April 25, 1978 the petitioner, Benito Gonzales, was arrested on a fugitive warrant charging him with having been indicted in the State of Texas for the sale of heroin in 1973 and thereafter leaving said state to escape prosecution. He was taken before a magistrate where he refused to waive extradition and, alleging indigency, requested the appointment of counsel. He was then incarcerated in the Jefferson County jail in lieu of $25,000.00 bail. On the next day, April 26th, the trial court refused to appoint counsel on the grounds that no rendition warrant had been received from the Governor of West Virginia and that there was no evidence that the State of Texas would proceed with extradition.

The rendition warrant from the Governor of West Virginia was received by Howard W. Wilt, Jefferson County Sheriff, on June 26, 1978. Gonzales was thereupon brought before the Circuit Court of Jefferson County, again informed of the charges against him and advised of his right to counsel. Upon his execution of an affidavit of indigency, the circuit court appointed counsel to represent him. Subsequently, private counsel was retained and court appointed counsel was discharged from further obligation.

Appellant filed his petition for a writ of habeas corpus in the Circuit Court of Jefferson County on July 20, 1978. In his petition, Gonzales alleged that 1) he had been unlawfully restrained since April 25, 1978, when he was arrested pursuant to a fugitive warrant; 2) he was denied counsel from his incarceration on April 25, 1978 until appointment of counsel on June 26, 1978, thereby depriving him of right to make application for reduction of bond (which had been set at $25,000); 3) he left the State of Texas in 1972 and has not been in that state at any time since; 4) he is not the same person named in the indictment nor did he make any sale of heroin to a narcotics agent in Texas in 1973 as alleged in the Texas indictment; and 5) information obtained from the State of Texas officials regarding identification of him as the person charged in the indictment must be suppressed due to his illegal seizure by the West Virginia State Police.

Through his counsel, appellant sought to continue the case to September 22, 1978. A hearing was held on that date. Appellant was the only person to testify at the hearing. His testimony essentially was supportive of the allegations contained in his petition for habeas corpus. The court, after consideration of the evidence and arguments of counsel, denied appellant's prayer for a writ of habeas corpus and granted him a ninety day stay to permit him to seek a writ of error to this Court. This Court, on December 4, 1978, granted appellant a writ of error.

In his appeal here, appellant relies upon three principal errors: 1) that he was denied counsel from April 25, 1978 to June 26, 1978; 2) that the trial court erred in finding him to have been present in the demanding state on the date of the alleged offense [in 1973] and finding that he was the person named in the extradition papers; and 3) that the trial court erred in failing to dismiss the extradition proceeding and grant appellant relief in habeas corpus because the evidence relied upon by the trial court had been obtained as a result of an unlawful seizure of appellant and that the evidence thereby obtained was illegal and should have been suppressed.

We reverse the action of the trial court and remand the case with directions that the appellant be discharged from further custody. Our action is premised on our firm belief in the state's failure to properly and adequately identify the appellant as the person named in the extradition papers. This being so, other assignments of error need not be discussed.

In *State ex rel. Mitchell v. Allen,* 155 W. Va. 530, 185 S.E. 2d 355 (1971) this Court said in Point 2, Syllabus:

> In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers.

Likewise in *Michigan v. Doran,* ____ U.S. ____, 99 S. Ct. 530, ____ L. Ed. ____ ____ (1978) (24 Crim. L. Rep. 3031) it was said:

> Once the governor has granted extradition, a court considering release on habeas corpus can

do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

The extradition clause of the United States Constitution [Article IV § 2] was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Article IV, § 2 of the U. S. Constitution. *See, Michigan v. Doran, supra.* A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. This leaves for determination by the asylum state the questions hereto set forth in *State ex rel. Mitchell v. Allen, supra,* and *Michigan v. Doran, supra.* In the instant case our concern is a lack of proper identification.

The record reveals that the Texas authorities furnished a photograph and a document styled "Identification Bureau, Bexar Co. Sheriff's Dept. San Antonio, Texas", to the West Virginia authorities in an effort to prove the identity of appellant. The appellant admits the photograph is a photograph of himself but he claims this was taken in 1972 when he was in Texas and does not prove that he is the person named in the indictment. The identification document described the person named in the indictment as being 5 feet 5 inches tall, 135 pounds, tattoos on both forearms and missing the tip of his little finger on his right hand. The birth date was given as May 12, 1943. Appellant says he is 5 feet 7 inches tall, weighed 138 pounds in 1972; has no tattoos on his arms and is not missing the tip of his little finger on his right hand. It was admitted that appellant had a scar on his right little finger. Appellant testified that he was born on April 6, 1944 and that his half-brother was born on May 12, 1943 and that he was the one who had tattoos on both arms. The state offered no testimony to

contradict this testimony, relying exclusively upon the Governor's warrant and the furnished documents.

In *Ex Parte Parker*, (Texas 1974) 515 S.W.2d 926 it was held that where identity is put in issue, the burden shifts to the state to show that the person taken into custody and held for extradition is the identical person named in the Governor's warrant. *See also, Ex Parte Spencer*, (Tex. 1978) 567 S.W.2d 520. In both *Parker* and *Spencer* identity was placed in issue by the testimony and affidavit of the accused.

We subscribe to what we believe to be the majority view that the issuance of the Governor's warrant, regular on its face, makes a prima facie case for extradition. Where, however, the accused denied that he is the same person named in the warrant and presents some evidence tending to support his denial, the issue of identity is raised and the burden is upon the state to prove identity. We are aware of *Ex Parte Buel*, (Tex. 1971) 468 S.W.2d 385; *Ex Parte Harvey*, (Tex. 1970) 459 S.W.2d 853; *McNeil v. Mississippi*, (Miss. 1977) 348 So.2d 1007, wherein it was held that the testimony of the accused was not sufficient to overcome the prima facie case of the state by the introduction of the Governor's warrant. See, however, *Nelson v. Illinois*, 11 Ill. App.3d 1092, 297 N.E. 2d 172 (1973); *State v. Limberg*, 274 Minn. 31, 142 N.W.2d 563 (1966).

Here, not only did appellant deny he was the person named in the warrant, he denied he had ever used the name, Benito Rico, the person charged in the Texas indictment; he denied that the tip of the little finger on his right hand was missing; he denied that he had tattoos on both arms; and he denied that he was 5 feet 5 inches tall. From the foregoing, it is apparent that the issue of identity had been raised. The burden of proving identity then shifted to the state and the state not having offered any evidence to refute the evidence of the appellant we hold that the state has failed to sufficiently prove the identity of the person named in the warrant.

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is reversed and the case is remanded with directions that appellant, Benito Gonzales, be discharged from further custody.

*Reversed and remanded.*