STATE *ex rel.* JOHN EDWARD WILLIAMS

*v.*

STEVEN D. NARICK, *Circuit Judge*

(No. 14697)

Decided April 4, 1980.

*Schrader, Stamp & Recht and Michael J. Moyle*, for petitioner.

*Chauncey H. Browning*, Attorney General, *Frances W. McCoy*, Assistant Attorney General, for respondent.

McGRAW, JUSTICE

The petitioner, John Edward Williams, was indicted by the Marshall County grand jury in March, 1974, for the murders of Carlton and Dorothy Harris. Williams was tried for the death of Dorothy Harris in April of 1975, and on May 14, 1975, he was convicted of murder in the first degree. That judgment was subsequently appealed to this Court and in a decision filed December 5, 1978, the conviction was reversed and the case remanded for a new trial. *State v. Williams*, ____W.Va.____, 249 S.E.2d 758 (1978).[1]

The reversal of the conviction in the first *Williams* opinion was based primarily upon evidentiary problems. Certain items of physical evidence which had been introduced by the state were held by this Court to be inadmissible as illegally seized. Additionally, the state had placed in evidence several confessions. Based upon the record in the case, the court concluded that the initial confession had been made as a result of the illegally seized physical evidence. For this reason, the confession was ruled inadmissible as the "fruit" of the illegal search and seizure.[2] A question remained, however, con-

---

[1] The basic facts surrounding the case are set forth in the earlier opinion of this Court, *State v. Williams, supra*, and will not be repeated here.

[2] *State v. Williams, supra*, 249 S.E.2d at 764, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

To trace the development of the rule excluding evidence derived indirectly from unlawful police conduct as "fruit of the poisonous tree," see generally, *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed. 2d 416 (1975); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963); *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). See also, *McCloud v. Bounds*, 474 F.2d 968 (4th Cir. 1972).

cerning the admissibility of the second and all successive extrajudicial confessions. Without explicitly holding the succeeding confessions inadmissible, the Court noted that the State had failed to meet its burden of removing the taint of causation tracing back to the initial confession and the unlawful search and seizure.[3]

Based upon the opinion issued in the first *Williams* case, counsel for the petitioner filed several motions in advance of trial. One of these motions requested suppression of all physical evidence ruled inadmissible by this Court, and suppression of "all five (5) confessions of the defendant." Upon the motion, a hearing was held before the respondent, Judge Steven D. Narick of the Second Judicial Circuit. At that hearing, Judge Narick suppressed all physical evidence described, as well as the first confession given by the defendant. The motion to suppress the remaining four confessions was denied.

Petitioner also raised the issue of his competence to stand trial. On July 25 and August 22, 1979, a hearing was held to resolve the issue. At the close of the hearing, Judge Narick ruled that Williams was competent to stand trial, basing this finding upon a preponderance of the evidence.[4]

---

[3] "Where an accused makes a confession as a result of being confronted with illegally seized evidence, and upon subsequent questioning again confesses, there is a presumption that the second and each succeeding confession are the product of the first. The prosecution has the burden of showing by clear and substantial proof that the second and each subsequent confession was made when the mind of the accused was free from the influence which induced the prior confessions. Absent such showing all successive extrajudicial confessions must be excluded." *State v. Williams, supra,* 249 S.E.2d at 764, citing *Bunting v. Commonwealth,* 208 Va. 309, 157 S.E.2d 204 (1967).

[4] This is the proper standard on preliminary and collateral matters generally, *State v. Milam,* ___W.Va.___, 260 S.E.2d 295 (1979), and is specifically provided for in this particular context. W.Va. Code § 27-6A-2(b) provides in part:

At the termination of [a hearing to determine a defendant's competency to stand trial] the court of record shall make a finding of fact upon a preponderance of the evidence as to the individual's competency to stand trial based on whether or not

Based upon Judge Narick's rulings on these motions, the defendant Williams petitioned this Court for a writ of prohibition, citing as grounds Judge Narick's rulings concerning the confessions previously mentioned, and concerning the competence of the accused to stand trial.[5]

# I
## ADMISSIBILITY OF TAINTED CONFESSIONS

As a general rule, the standard for issuance of the writ of prohibition is set forth in W.Va. Code § 53-1-1. That section states that prohibition shall lie "in all cases of usurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction exceeds its legitimate powers."

Traditionally, the writ of prohibition speaks purely to jurisidictional matters. It was not designed to correct errors which are correctable upon appeal. *State v. Muntzing*, 146 W.Va. 878, 122 S.E.2d 851 (1961); *Lake O'Woods Club v. Wilhelm*, 126 W.Va. 447, 28 S.E.2d 915 (1944). Indeed, this Court has specifically stated that the writ does not lie to correct "mere errors" and that it cannot serve as a substitute for appeal, writ of error or certiorari. *Handley v. Cook*, ___W.Va.___, 252 S.E.2d 147 (1979); *State ex rel. Casey v. Wood*, 156 W.Va. 329, 193 S.E.2d 143 (1972); *see also, City of Huntington v. Lombardo* 149 W.Va. 671, 143 S.E.2d 535 (1965).

---

the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial.

[5] Petitioner originally presented a third issue as well, dealing with the state's scheduling the trial in the case involving the death of Carlton Harris ahead of the retrial in the case involved in *Williams I*. This issue seems to have been abandoned and was never properly briefed or argued. Under these circumstances, the issue is waived and will not be considered. *West Virginia Department of Highways v. Buckley*, 260 S.E.2d 826 (W.Va. 1979); Syl. pt. 3, *Higginbotham v. City of Charleston*, ___ W.Va. ___, 204 S.E.2d 1 (1974).

Because of the nature of the writ, there has been a general reluctance to allow its use in interlocutory matters unless there was exhibited some obvious jurisdictional defect or purely legal error on the part of the trial court. In the absence of jurisdictional defect, the administration of justice is not well served by challenges to discretionary rulings of an interlocutory nature. These matters are best saved for appeal and, as a general rule, do not present a proper case for issuance of the writ. *Woodall v. Laurita* 156 W.Va. 707, 195 S.E.2d 717 (1973); *see also, State v. Milam,* ___W.Va.___, 260 S.E.2d 295 (1979); *State ex rel. Peacher v. Sencindiver,* ___ W.Va. ___, 233 S.E.2d 425 (1977).

Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case or its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue. Syl. pt. 2, *Woodall v. Laurita,* 156 W.Va. 707, 195 S.E.2d 717 (1973).

Viewed against this backdrop, it is clear that a writ of prohibition will not lie to bar trial based upon Judge Narick's ruling on the admissibility of confessions elicited from the petitioner. While Judge Narick's ruling on the matter may or may not be correct, it does not deprive his court of jurisdiction. Beyond that, however, the ruling does not really present a legal issue, but a factual one.

In determining the admissibility of a confession, "the ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for

self-determination critically impaired, the use of his confession offends due process.' *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). *See also, Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (institution of procedural safeguards to insure voluntariness); *cf. Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (requirement of voluntariness extended to use of admissions obtained in violation of *Miranda* for impeachment purposes).

This Court has adopted, as a guideline, a presumption that successive confessions are the product of the initial confession. *State v. Williams, supra,* citing *Bunting v. Commonwealth,* 208 Va. 309, 157 S.E.2d 204 (1967). However, this presumption is a rebuttable one. It has never been the law that "making a confession under circumstances which preclude its use perpetually disables the confessor from making a usable one after those conditions have been removed." *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). While it is true that a confession induced by an unlawful search and seizure is inadmissible, *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), it is also true that where police obtain a subsequent confession (or confessions) after obtaining one which is inadmissible there must be an independent evaluation of whether the coercive actions which produced the first continued to produce the later confession. *United States v. Bayer, supra. See also, Darwin v. Connecticut,* 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); *Leyra v. Denno,* 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954); *Lyons v. Oklahoma,* 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944).

In the first *Williams* opinion, we stated that:

> There was no evidence demonstrating a break in the causative link running between the confessions in this case. The State did not meet its burden, and we must presume each confession was the product of the preceding illegalities. ___W.Va.___, 249 S.E.2d 764.

While all the confessions were presumed to be tainted, it was impossible to formally rule on the admissibility of any except the initial one. Since the initial confession was admitted into evidence in the first trial, there was no showing concerning the independence of the subsequent confessions. In the first trial, we did not see a record developed concerning the independent admissibility of the confessions here at issue.

This will be one of the issues in the new trial. Since the first confession has been held to be involuntary, it can no longer be used for any purpose. The State is faced with the resulting presumption that all subsequent confessions are inadmissible. Therefore, the prosecution will be faced with the task of showing by clear and substantial proof that "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint'." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed.307 (1939). In the absence of such a showing, the confessions cannot be used.

Since the issue will have to be resolved by developing the factual circumstances surrounding each confession, the respondent's ruling on the issue is not subject to attack by a writ of prohibition.

In the words of my brother, Neely, in the recent case of *Hinkle v. Black*, ___W.Va.___, 262 S.E.2d 744, 749 (1979):

> In most of the cases where a rule has been issued the question has been exclusively legal and not a mixed question of fact and law. This court is not engineered to be as efficient a finder of fact as a trial court because of the cumbersome procedures for taking depositions. When, however, there is a clear legal question it is often efficient to come in prohibition. . . . However, where the proper resolution of the legal question first depends upon a proper finding of disputed

facts, then the efficiency of prohibition disappears because of mechanical problems in fact finding inherent in multimember courts. In that event, surely, the relative adequacy of a remedy by appeal becomes correspondingly enhanced.

The reasoning set forth in the *Hinkle* case would seem most appropriate in a case such as this, where we deal with a preliminary ruling on a question of admissibility. We therefore hold that in the absence of compelling evidence of irremediable prejudice, a writ of prohibition will not lie to bar trial based upon the judge's factual ruling on such preliminary matters.

## II
## COMPETENCE TO STAND TRIAL

In addressing the issue of petitioner's mental condition, we are constrained once more to restrict the scope of analysis to conform with the general principles enunciated in the preceding portion of this opinion. Accordingly, we are not here concerned with whether the respondent was right or wrong in ruling the petitioner competent to stand trial. Our inquiry goes only to the narrow question of whether Judge Narick's ruling is properly subject to attack by writ of prohibition. We hold that it is not.

John Edward Williams presents a very complex set of personal characteristics. At the time of psychiatric and psychological testing during 1979, he was thirty years of age and apparently in good physical condition. Beyond this, contradictions run rampant.

On the one hand, Williams is diagnosed as having "severe and disabling organic brain disease," with his mind riddled by "considerable mental retardation" and "alcoholic dementia." Indeed, one of the psychiatrists who examined him described his mental status as a "cognitive vacuum," and concluded that Williams "is now and has been for some years mentally retarded and brain damaged; that he is not able to make moral or social judgments; and that he has great difficulty under-

standing the charges against him, and the significance of the proceedings regarding these charges. He, therefore, is not able to cooperate with his lawyer in his own defense."[6]

On the other hand, it was the conclusion of one of the state's experts that "the defendant was, at the time of the offense of which he is charged, not suffering from such disease or defective condition of the mind as to cause him to lack the capacity either to appreciate the wrongfulness of his actions, or to conform his actions to the requirements of the law. It would appear that he was criminally responsible. Furthermore, the defendant is competent to stand trial, having the capacity to consult with his attorney and to assist in the preparation of his defense. . . ."[7]

From the reports and testimony in the record, we are able to ascertain the following facts. The petitioner suffers from "mild mental retardation." On the Wechsler Adult Intelligence Scale, he shows a full scale IQ of sixty-one (61) and a verbal IQ of fifty-five (55), both of which place him in the lower one or two percent of the population.[8] He is apparently a heavy user of alcohol, having been so for possibly twenty years, and appears, in fact, to be physically addicted to its use.[9] It further appears that Mr. Williams was in some manner removed from school at about the third grade level. He is functionally illiterate, and seems unable to read and write much more than his own name.

---

[6] Report of Dr. Jonathan M. Himmelhock, University of Pittsburgh Western Psychiatric Institute and Clinic, in letter to Judge Narick (May 4, 1979).

[7] Report of Dr. Lester A. Kubski, Staff Psychiatrist, Weston State Hospital (June 8, 1979).

[8] An "average" IQ on the Wechsler scale is defined as falling between eighty-five (85) and one hundred fifteen (115). Sixty-four percent (64%) of the population falls into this range. Another thirty-two percent (32%) fall between seventy (70) and one hundred thirty (130) on the scale. Two percent (2%) fall below seventy (70), and two percent above one hundred thirty (130).

[9] There are reports of "shakes and DT-like episodes" when he is deprived of alcohol.

While the record does raise doubts as to the petitioner's competency, and even graver doubts concerning his criminal responsibility, we are unable to say that Judge Narick's ruling constitutes a "usurpation and abuse of power," or even that his court has "[exceeded] its legitimate powers." W.Va. Code § 53-1-1. In the absence of such a finding, and in the absence of jurisdictional defect or purely legal error, once again, a writ of prohibition does not lie. *Hinkle v. Black, supra.*

The crux of the matter here, as in the issue involving the confessions, is that we are dealing with a ruling of the trial judge made in his capacity as an interlocutory fact-finder. As such, this factual ruling is not, in general, subject to control by writ of prohibition. *State v. Milam,* \_\_\_W.Va.\_\_\_, 260 S.E.2d 295 (1979).

When a trial judge conducts a hearing to inquire into the competence of an accused to stand trial, he sits to hear evidence and issue a preliminary ruling on a question of fact: the mental level of the defendant. The scope of his inquiry and the standard for his ruling are clearly set forth in the jurisprudence of our state and nation.

"To be competent to stand trial, a defendant must exhibit a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and a 'rational, as well as factual, understanding of the proceedings against him'."[10] *State v. Arnold,* \_\_\_W.Va.\_\_\_, 219 S.E.2d 922 (1975). *See also, Dusky v. United States* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Heard v. United States,* 263 F. Supp. 613 (D.C. 1967), reversed on other grounds, 390 F.2d 866 (1967); *State v. Milam,* \_\_\_W.Va.\_\_\_, 226 S.E.2d 433 (1976).

We cannot say that Judge Narick, in ruling the petitioner competent to stand trial, abused or exceeded his

[10] Similarly, W.Va. Code § 27-6A-2, provides in part that:
The court of record shall make a finding of fact upon a preponderance of the evidence as to the individual's competency to stand trial based on whether or not the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial.

legitimate powers. There was clearly some evidence which would support such a ruling.[11] This being the case, prohibition is inappropriate.

While it is true that there may be cases where the writ will lie, *State ex rel. Walton v. Casey*, ___W.Va.___, 258 S.E.2d 114 (1979), these cases constitute only a well-defined minority. As a general principle, where there is some competent evidence before the court which will support a ruling of competence, the ruling will not be subject to attack. It is only in a case where there has been no evidence supporting a finding of competence that prohibition will lie. Note 4, *State v. Milam*, ___W.Va.___, 260 S.E.2d 295, 299 (1979).

Accordingly, the writ of prohibition prayed for is hereby denied.

Justice Miller, deeming himself disqualified, did not participate in the consideration or decision of this case, nor in the previous case of *State v. Williams*, ___W.Va.___, 249 S.E.2d 758 (1978), where notation of his disqualification was inadvertently omitted.

*Writ denied.*

---

[11] In their reports to the Circuit Court, Drs. Kubski and Bell, of Weston State Hospital, specifically related their conclusions of competence in nearly the exact language used by the United States Supreme Court in the *Dusky* case, *supra*.