STATE *ex rel.* DAVID ALAN JONES

*v.*

HONORABLE RICHARD A. WARMUTH, *Judge, etc.*

(No. 14893)

Decided November 25, 1980.

*Schrader, Stamp & Recht and Arthur M. Recht, Madden, Hughes & Whorton and G. Charles Hughes,* for relator.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey,* Assistant Attorney General, *Richard S. Galser, Jr.,* Assistant Attorney General, for respondent.

MILLER, JUSTICE

In this petition for prohibition the relator, David Alan Jones, raises the issue of whether his claim of insanity may be considered as grounds for opposing extradition.

The relator was charged by the State of Oklahoma with the commission of second degree murder. The Oklahoma felony information was filed on May 30, 1979, charging the relator with the commission of the offense, within the State of Oklahoma, on May 17, 1979. Upon notification from Oklahoma authorities, a magistrate of Marshall County, West Virginia, issued a warrant for the arrest of the relator. Pursuant to the Marshall County warrant, the relator was taken into custody.

On June 25, 1979, the Governor of Oklahoma requested the relator's extradition from West Virginia, in accordance with the provisions of W. Va. Code, 15-1-7, in order to bring the relator to trial in Oklahoma.

An extradition hearing was held in the Circuit Court of Marshall County on July 31, 1979. Counsel for the

relator stated his intention to challenge extradition by writ of habeas corpus under W. Va. *Code*, 5-1-9, and requested the Circuit Court to order a psychiatric examination of the relator. The psychiatric examination was alleged to be necessary, in light of the relator's history of mental illness, to determine if he would be capable of assisting his counsel in the challenge to extradition.

The prosecuting attorney agreed that the relator's record reflected a history of mental illness, and did not oppose the motion for psychiatric examination.[1] Consequently, the Circuit Court granted the motion for an examination to determine competency and directed that the relator undergo psychiatric examination by Dr. David Hill and psychological examination by Dr. Robert Mendelson. The court instructed that the examination focus upon the relator's "competency to assist his counsel in preparing a Petition for a Writ of Habeas Corpus, and further as to his competency to participate and assist his counsel in a hearing in such a Habeas Corpus proceeding."

After his examination, Dr. Hill concluded that the relator's mental state was such that "[i]t may be difficult for him to assist his counsel" and that his loss of memory "might also hinder his ability" to assist in his own defense. Dr. Mendelson, on the other hand, found that the relator was capable of assisting his counsel.

---

[1] The transcript of this hearing contains the following dialogue:
"THE COURT: ...

"Is the petition to determine competency in any way resisted, Mr. Karl?

"MR. KARL: No, Your Honor, for several reasons. In conferring with the members of the sheriff's office, I am aware of the defendant/petitioner's confinement at the Northern Panhandle Mental Health Center on at least three occasions; further, I am aware of an attempted suicide by hanging while the petitioner was incarcerated in the Marshall County jail; and in addition, there has been recently filed an application for involuntary commitment, which is as a matter of fact, set for a probable cause hearing. So for these reasons the State would not resist, and in addition, for the serious nature of the offense he is charged with."

In light of the apparent conflict in the test results, the relator moved, on February 25, 1980, for an additional, independent psychiatric evaluation. The Honorable Richard A. Warmuth, who had replaced the Honorable Stephen D. Narick in the case, granted the motion for further independent evaluation.

Upon independent evaluation, Dr. Jonathan Himmelhoch concluded that the relator was "presently unable to assist his lawyers regarding his presence in Oklahoma or regarding the nature of his behaviour when he was there."

At a subsequent hearing on May 5, 1980, the prosecutor raised the question of whether the issue of mental competency is properly within the scope of inquiry in extradition proceedings. Upon considering opposing counsels' memoranda of law, the court ruled on May 29, 1980, that competency to participate and to assist counsel in an extradition proceeding is "irrelevant and cannot be raised by the defendant."[2]

The relator then applied to this Court for a writ of prohibition in order to prevent the Circuit Court of Marshall County from proceeding further without determining first whether the relator is competent to participate and assist counsel in the extradition proceeding.[3]

---

[2] Relator attempts to raise the question that Judge Warmuth's ruling overturned Judge Narick's order in regard to the insanity issue. We do not read the record as raising the issue. Both judges had initially permitted psychiatric examination of the relator because the prosecuting attorney did not object to the examinations. It was only when the prosecutor raised the question of the relevancy of the insanity issue that the trial judge decided the point. The case at this time was before Judge Warmuth.

[3] Since the matter involved a pure legal issue meeting the functional criteria set out in *Hinkle v. Black*, ___ W. Va. ___, 262 S.E.2d 744 (1979), and the cases therein cited, we granted a rule to show cause. The action taken in this case should not be considered as an invitation to utilize prohibition to contest a judge's preliminary finding of no insanity when the issue has been heard. *See State ex rel. Williams v. Narick*, ___ W. Va. ___, 264 S.E.2d 851, 857 (1980); *State v. Milam*, ___ W. Va. ___, 260 S.E.2d 295, 301 (1979). In this case, we deal with the substantive right to raise the insanity issue.

Article IV, Section 2 of the United States Constitution sets forth the basis for extradition between the states:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Because of the constitutional basis for extradition proceedings, the United States Supreme Court has established limitations on the scope of the inquiry that may be pursued in a state court by an accused in resisting extradition. In *Michigan v. Doran,* 439 U.S. 282, 289, 58 L.Ed.2d 521, 527, 99 S.Ct. 530, 535 (1978), the Court stated:

"Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state;(c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

We have recognized substantially the same limitations in Syllabus Point 1 of *State ex rel. Gonzales v. Wilt,* ___ W. Va. ___, 256 S.E.2d 15 (1979), and Syllabus Point 2 of *State ex rel. Mitchell v. Allen,* 155 W. Va. 530, 185 S.E.2d 355 (1971), *cert. denied,* 406 U.S. 946, 32 L.Ed.2d 333, 92 S.Ct. 2048 (1972):

"In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at

the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers.[4]

The relator's argument in the present case is that, in order to conduct a fair inquiry into these aspects of extradition, the relator must be competent to understand the nature of the proceedings against him and be able to assist his counsel on his own behalf. The competence of the relator to assist his counsel would be particularly relevant to those factual issues where the relator's own knowledge is necessary: his presence in the demanding state at the time the offense was committed, and the identity of the relator as the person named in the extradition papers.

This issue is new to us and rarely has been raised or discussed by other courts. The State refers to a number of decisions for the proposition that mental competence is not a proper issue for consideration in an extradition proceeding. *See Drew v. Thaw*, 235 U.S. 432, 59 L.Ed. 302, 35 S.Ct. 137 (1914); *Charlton v. Kelly*, 229 U.S. 447, 57

---

[4] Despite variations in phrasing, the scope of inquiry set forth by the United States Supreme Court in *Doran* and this Court in *Wilt* and *Mitchell* are, in essense, the same. It may be noted that one clause of our formulation is "whether the petitioner was present in the demanding state at the time the criminal offense was committed," whereas the counterpart in the federal formulation states "whether the petitioner is a fugitive."

In *Hyatt v. New York ex rel. Corkran*, 188 U.S. 691, 47 L.Ed. 657, 23 S.Ct. 456 (1903), the United States Supreme Court pointed out that determination of whether an accused is a "fugitive" is based upon an inquiry into whether "he was within the demanding state at the time he is alleged to have committed the crime charged and subsequently withdrew from her jurisdiction." 188 U.S. at 713, 47 L.Ed. at 662, 23 S.Ct. at 460.

Similarly, in *Moncrief v. Anderson*, 342 F.2d 902 (D.C. Cir. 1964), the court held that "Fugitivity means presence in the demanding state when the crime was allegedly committed." 342 F.2d at 904. *See also, Hogan v. O'Neill*, 255 U.S. 52, 65 L.Ed. 497, 41 S.Ct. 222 (1921); *Appleyard v. Massachusetts*, 203 U.S. 222, 51 L.Ed. 161, 27 S.Ct. 122 (1906); *Fowler v. Ross*, 196 F.2d 25 (D.C. Cir. 1952).

Consequently, it is apparent that the difference in the West Virginia and the federal formulation is in reality only alternate expressions of the same points.

L.Ed. 1274, 33 S.Ct. 945 (1913); *Kellems v. Buchignani*, 518 S.W.2d 788 (Ky. 1975); *State ex rel. Davey v. Owen*, 133 Ohio St. 96, 12 N.E.2d 144 (Ohio 1937). These decisions, however, with the exception of *Kellems*, address the question of incompetence at the time the crime was committed, or a present incompetence to stand trial for those charges in the demanding state. They conclude that such insanity issue can and should be raised in the state which seeks to try the offense. They do not address the question of the relator's inability to participate and assist in the extradition proceeding itself. In *Kellems*, the issue was raised but the court in a two-paragraph opinion, over a vigorous dissent by two justices, indicated that since the insanity issue could be raised in the demanding state "that the question of the mental competence of a fugitive in extradition proceedings is not relevant." 518 S.W.2d at 788.

It is this issue of relevancy that was directly confronted by the Alaska Supreme Court in *Kostic v. Smedley*, 522 P.2d 535 (Alaska 1974). The court analyzed its extradition statute, which is similar to ours, and recognized the fugitive's absolute right to counsel to assist him in a challenge to the arrest and detention resulting from the initiation of extradition proceedings. The court concluded:

> "In order to give meaning to the alleged fugitive's right to bring a habeas corpus action to test the legality of his arrest, and to give meaning to his right to demand and procure legal counsel, it is essential to due process that such person has sufficient mental competency to understand the proceedings and to consult with and assist his counsel in such proceedings." 522 P.2d at 538.

The Colorado Supreme Court addressed the question indirectly in *Luker v. Koch*, 176 Colo. 75, 489 P.2d 191 (1971), but found it unnecessary to decide the issue under the facts of the case:

> "The only conceivable situation in which a court in the asylum state might be required to

consider sanity would be one in which the petitioner is so incompetent as to be totally unable to assist his counsel in a habeas corpus proceeding in connection with a pending extradition. Such a situation is not presented by this record, and we need not therefore pass upon such an issue." 489 P.2d at 193-94.

In *Locke v. Burns*, ___ W. Va. ___, 238 S.E.2d 536 (1977), we acknowledged that an extradition proceeding involved a curtailment of liberty:

"At best extradition means an extended period of detention, involving custody pending administrative arrangements in two states as well as forced travel in between." 238 S.E.2d at 539, *quoting Ierardi v. Gunter*, 528 F.2d 929, 930 (1st Cir. 1976).

Because of this deprivation of liberty, the Colorado and Alaska courts have concluded that habeas corpus proceedings to test the legality of extradition will be considered criminal in nature. *Kostic v. Smedley*, 522 P.2d 535 (Alaska 1974); *Mora v. District Court*, 177 Colo. 381, 494 P.2d 596 (1972).

Consistent with the criminal nature of the extradition proceedings, the West Virginia statutory provision setting forth the extradition procedure provides that the accused "has the right to demand and procure legal counsel." W. Va. Code, 5-1-9(a). Under this statute, we have concluded that counsel must be furnished for indigents otherwise unable to procure their own counsel. *State ex rel. Gonzales v. Wilt*, ___ W. Va ___, 256 S.E.2d 15 (1979); *State ex rel. Sublett v. Adams*, 145 W. Va. 354, 115 S.E.2d 158 (1960), *cert. denied*, 366 U.S. 933, 6 L.Ed.2d 392, 81 S. Ct. 1652. *See* Note, *Indigents' Right to Appointed Counsel in Interstate Extradition Proceedings*, 28 Stan. L. Rev. 1039 (1976).

Independent of statutes such as W. Va. Code, 5-1-9(a), we have traditionally employed a higher standard of protection for the individual to those proceedings which involve a deprivation of liberty. Recently, in *State ex rel.*

*Graves v. Daugherty*, ____ W. Va. ____, 266 S.E.2d 142 (1980), we provided for the right to court-appointed counsel in a paternity suit and set out cases where such right has been similarly extended:

> "Our state constitutional due process right to counsel requires court-appointed attorneys in criminal and civil actions which may constrain one's liberty or important personal rights. *Hawks, supra* [*State ex rel. Hawks v. Lazaro*, 157 W. Va. 417, 202 S.E.2d 109 (1974)] (right to court-appointed counsel in involuntary civil mental health commitment proceedings); *Eastern Associated Coal Corp. v. Doe*, W. Va., 220 S.E.2d 672 (1975) (right to court-appointed counsel in civil and criminal contempts); *Bullett v. Staggs*, W. Va., 250 S.E.2d 38 (1978) (court-appointed counsel for violation of municipal ordinances); *State ex rel. Lemaster v. Oakley*, 157 W. Va. 590, 203 S.E.2d 140 (1974) (court-appointed counsel for indigent parents in civil child neglect proceedings); *Wilson v. Bambrick*, 156 W. Va. 703, 195 S.E.2d 721 (1973) (court-appointed counsel for civil juvenile proceedings). *See* Note, The Indigent's Right to Counsel In Civil Cases, 76 Yale L.J. 545 (1967). We eschew the rubric of 'criminal' versus 'civil' in determining what process is fair. The characteristics and ramifications of a proceeding, rather than its label, spawn due process requirements."

Nor have we been insensitive to the rights of insane persons. In *State ex rel. Walker v. Jenkins*, 157 W. Va. 683, 203 S.E.2d 353 (1974), we held that a criminal defendant who has not been convicted could not be held in a mental institution indefinitely for purposes of determining his competency to stand trial. In *State v. Grimm*, 156 W. Va. 615, 195 S.E.2d 637 (1973), we broadened the insanity test in criminal cases. *State ex rel. Hawks v. Lazaro*, 157 W. Va. 417, 202 S.E.2d 109 (1974), set down standards constitutionally mandated for the involuntary commitment of an insane person. Moreover, we have historically accorded the writ of habeas corpus to an insane person to test the legality of his confinement.

*Sloan v. Wachtel*, ___ W. Va. ___, 233 S.E.2d 137 (1977); *Wright v. Wright*, 78 W. Va. 57, 88 S.E. 606 (1916).

The United States Supreme Court has recognized that "the conviction of an accused person while he is legally incompetent violates due process, *Bishop v. United States*, 350 U.S. 961, 100 L.Ed. 835, 76 S.Ct. 440 (1956), and that state procedures must be adequate to protect this right." *Pate v. Robinson*, 383 U.S. 375, 378, 15 L.Ed.2d 815, 818, 86 S.Ct. 836, 838 (1966).

Once it is recognized that an extradition proceeding does involve incarceration in the asylum state pending a determination of certain key issues, the right to the effective assistance of counsel becomes apparent.[5]

Because an insane person may not possess sufficient rationality to comprehend the nature of the proceedings and to consult and communicate with his counsel, courts have viewed this type of insanity to foreclose the effective assistance of counsel. For this reason, the defendant may not be tried until he has regained his sanity. The historical and constitutional basis for this particular insanity rule is set out in *Drope v. Missouri*, 420 U.S. 162, 43 L.Ed.2d 103, 95 S.Ct. 896 (1975), where the court went on to reconfirm the test for such incompetency previously stated in *Dusky v. United States*, 362 U.S. 402, 4 L.Ed.2d 824, 80 S.Ct. 788 (1960):

> "It has long been accepted that a person whose mental condition is such that he lacks the capaci-

---

[5] In *Zambito v. Blair*, 610 F.2d 1192 (4th Cir. 1979), *cert. denied*, 445 U.S. 928, 63 L.Ed.2d 761, 100 S.Ct. 1316 (1980), the court acknowledged in an extradition proceeding that "a judicial finding of probable cause [is] a prerequisite to detention for an extended period of time. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975)." The court went on to acknowledge that under *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978):
"...an asylum state may not itself hold a traditional probable cause inquiry when the extradition documents on their face are in order and when those documents, although they do not set out the supporting facts, establish that there had been, in the demanding state, finding that there was 'reasonable cause' to believe that the individual as to whom extradition was sought had committed the charged offense." 610 F.2d at 1196.

ty to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.

"Accordingly, as to federal cases, we have approved a test of incompetence which seeks to ascertain whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' Dusky v. United States, 362 US, at 402, 4 L Ed 2d at 824, 80 S Ct 788." 420 U.S. at 171-72, 43 L.Ed.2d at 112-13, 95 S.Ct. at ____.

We adopted language similar to *Dusky* into Syllabus Point 2 of *State v. Arnold*, ____ W. Va. ____, 219 S.E.2d 922 (1975). *See also State ex rel. Williams v. Narick*, ____ W. Va. ____, 264 S.E.2d 851, 857 (1980).

Although challenge to an extradition proceeding is limited, there are nevertheless two key factual issues that may be raised: first, whether the fugitive was present in the demanding state at the time the crime was committed, and, second, whether the person held for extradition is in fact the same person who is wanted in the demanding state—the identity issue.

There can be little doubt that the resolution of either of these issues in favor of the fugitive can result in his release from incarceration in the asylum state. In *State ex rel. Gonzales v. Wilt*, ____ W. Va. ____, 256 S.E.2d 15 (1979), the accused contested both issues of presence and identity and was able to establish as to identity that the extradition papers contained information that did not match his physical characteristics but matched those of a relative. We concluded that this showing shifted the burden to the State to prove identity and since the State presented no evidence on this issue the fugitive was entitled to release. Other courts have also recognized the fugitive's right to prevail on such factual issues. *Clark v. Warden*, 39 Md. App. 305, 385 A.2d 816 (1978);

*Baker v. Laurie,* 118 R.I. 539, 375 A.2d 405 (1977); *Ex Parte Spencer,* 567 S.W.2d 520 (Tex. App. 1978).

Where the fugitive is in fact so insane that he is unable to consult and communicate with his counsel or understand the nature of the proceeding, his ability to raise such defenses as his presence and identity is completely foreclosed. The proceeding then becomes a procedural shell without substance. We do not believe that under the foregoing law this should occur.

We, therefore, conclude that in order to give meaning to a fugitive's right to test the legality of his arrest on the issue of his identity and presence in the demanding state at the time the crime was allegedly committed, and to give meaning to his right to have legal counsel, it is essential to due process that such person has sufficient mental competency to understand the proceeding and to consult with and assist his counsel in such proceeding.

We do not believe that this type of insanity issue will unduly delay orderly handling of extradition proceedings.[6] Undoubtedly, anytime a fugitive elects to challenge the validity of his arrest and extradition, some delay will be encountered. Such delay attends any adversary proceeding but delay cannot form the reason for abolishing the right to an adversary hearing.

The trial court is free to follow the time periods and procedures of W. Va. *Code,* 27-6A-1, although this procedure is by no means mandatory in an extradition proceeding. It is clear that the court need only find that from a preponderance of the evidence the fugitive is competent to consult with counsel since this issue is analogous to the preliminary pretrial finding where insanity is raised in a criminal case. *State ex rel. Williams*

---

[6] We stress again that the insanity issue involved is whether the defendant is presently competent to communicate and consult with his attorney and has a rational understanding of the proceeding. The issue of insanity at the time of the commission of the crime cannot be raised since the ultimate issue of guilt or innocence is not resolved at an extradition hearing.

*v. Narick,* ___ W. Va. ___, 264 S.E.2d 851, 857 (1980); *State v. Milam,* ___ W. Va. ___, 260 S.E.2d 295, 299 (1979). If the court conceives that the fugitive is insane in the sense that he does not comprehend the nature of the proceedings and cannot consult with counsel, then commitment can be accomplished under W. Va. Code 27-6A-1, *et seq.,* until he regains his sanity.

For the foregoing reasons, a moulded writ of prohibition is issued prohibiting the circuit court from hearing the extradition proceeding until it determines the sanity of the relator.

*Writ As Moulded*
*Awarded*