## S98A0688. OLIVER v. BARRETT.
### (500 SE2d 908)

THOMPSON, Justice.

This is an appeal from the denial of Oliver's petition for habeas corpus in an extradition proceeding. Oliver asserts the habeas corpus court should have determined that Illinois is seeking to extradite him just so it can commit him civilly, and that he is mentally incompetent. We affirm because the habeas corpus court properly limited its inquiry to the four issues set forth in *Michigan v. Doran*, 439 U. S. 282 (99 SC 530, 58 LE2d 521) (1978).

Oliver was arrested and indicted in Illinois for sexual assault, aggravated sexual battery, and unlawful restraint. He was released on bond and fled to Georgia. The Governor of Illinois issued a war-

rant and Oliver was arrested and held in the Fulton County jail.

Oliver filed a petition for writ of habeas corpus in which he alleged that the extradition request was a pretext to enable Illinois authorities to commit him civilly. He also alleged that he was not mentally competent. The State presented evidence to establish that Oliver was a fugitive facing criminal charges in Illinois. Accordingly, the court ordered Oliver to be extradited to that state.

1. Oliver claims that the trial court erred in not finding that the extradition request was a pretext to commit him civilly. We disagree.

The United States Supreme Court has established the standard of review for an asylum state in extradition cases:

> Once the governor has granted extradition, a court consider-ing release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Michigan v. Doran*, supra, 439 U. S. at 289.

The Georgia cases are consistent with *Doran*. Once the facts establish that the *Doran* requirements have been met, "a further inquiry into a petitioner's statutory and constitutional defenses vio-lates the clear intention that an extradition proceeding be of a sum-mary nature." *Hutson v. Stoner*, 244 Ga. 52, 53 (257 SE2d 539) (1979). See also *Marini v. Gibson*, 267 Ga. 398 (478 SE2d 767) (1996); *McCullough v. Stynchcombe*, 243 Ga. 24 (252 SE2d 453) (1979). Thus, even though OCGA § 17-13-1 (1) requires that extradition to the demanding state be solely for the purpose of a criminal prosecution, it is not appropriate for the habeas court to look behind the probable cause finding of the demanding state. *Johnson v. Mitchell*, 256 Ga. 339 (349 SE2d 186) (1986) (quoting *Rhodes v. North Carolina*, 255 Ga. 391 (338 SE2d 676) (1986)).

In *Johnson*, the petitioner claimed that Texas sought to extradite him for the purpose of collecting a civil debt. Finding the extradition requirements satisfied under *Doran*, this Court declined to look into whether the extradition proceeding was an effort by Texas to collect a civil debt.

In this case, as in *Johnson*, we need only determine whether the demanding state has charged Oliver with a crime. Any attempt to look behind the demanding state's charges would frustrate the sum-mary nature of the proceeding.

2. Oliver also claims that the habeas corpus court erred in failing to address the issue of his mental competency. In this regard, it

should be noted that Oliver does not claim he is mentally incompetent to stand trial.[1] Rather, Oliver claims he is mentally incompetent to understand and assist his counsel in handling the issues involved in the extradition proceeding itself. This is an issue which has not yet been addressed by this Court, and, indeed, has been addressed by only a handful of jurisdictions.

Those jurisdictions which have considered this question have come to different conclusions. Some jurisdictions take a broad approach, holding that a fugitive in an extradition proceeding must be sufficiently competent to understand the nature of the proceedings and to consult with counsel in connection with those proceedings. See, e.g., *In re Hinnant*, 678 NE2d 1314 (Mass. 1997); *Pruett v. Barry*, 696 P2d 789 (Colo. 1985); *State ex rel. Jones v. Warmuth*, 272 SE2d 446 (W. Va. 1980); *Kostic v. Smedley*, 522 P2d 535 (Alaska 1974). One jurisdiction, Kentucky, has a very narrow approach. It simply holds, in a two-paragraph opinion and over a vigorous dissent, that the mental competency of a fugitive in an extradition proceeding is wholly irrelevant. See *Kellems v. Buchignani*, 518 SW2d 788 (Ky. 1974). Another jurisdiction, Louisiana, takes a middle of the road approach. It holds that the mental competency of a fugitive is only relevant insofar as it concerns his ability to assist counsel in ascertaining and preparing for the limited issues to be decided in an extradition hearing. *State v. Tyler*, 398 S2d, supra at 1112. We are persuaded by, and adopt, the Louisiana approach because it best comports with the summary nature of an extradition proceeding, and the principles and goals articulated in *Doran*.

As we observed in Division 1, *Doran* limits the inquiry in an extradition proceeding to four issues: (a) the validity of the extradition documents; (b) whether the petitioner is charged with a crime; (c) the identity of the petitioner; and (d) the petitioner's status as a fugitive. Of these four issues, a petitioner's mental competence realistically impacts only upon the last two — identity and fugitive status. *State v. Tyler*, supra at 1112. Thus, where, as here, a petitioner in an extradition proceeding claims he is mentally incompetent, the habeas corpus court need only determine whether the petitioner is sufficiently competent to assist counsel in ascertaining his identity and whereabouts at the time of the crime.[2]

In this case, although Oliver claims he is mentally incompetent and does not understand the nature of an extradition proceeding, he

---

[1] Such a claim is not cognizant in an extradition proceeding and would have to be raised in the demanding state. See *Charlton v. Kelly*, 229 U. S. 447 (33 SC 945, 57 LE 1274) (1913); *State v. Tyler*, 398 S2d 1108, 1111 (La. 1981).

[2] "Fugitivity means presence in the demanding state when the crime was allegedly committed." *Moncrief v. Anderson*, 342 F2d 902, 904 (DC Cir. 1964).

does not allege that he is so incompetent that he is unable to assist counsel in ascertaining his identity or his presence in Illinois when the crime was committed.[3] Moreover, the record would not support such an allegation.[4] It follows that the habeas corpus court properly ordered Oliver to be extradited to Illinois. See *Romeo v. Roache*, 820 F2d 540, 544 (1st Cir. 1987) (mental competency would not be considered in international extradition proceeding where petitioner did not claim he had lost all contact with reality or is totally unable to communicate).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 1998.

*Derek H. Jones,* for appellant.

*Paul L. Howard, District Attorney, David E. Langford, Lu Ann Brown, Assistant District Attorneys,* for appellee.

---

[3] Oliver's amended petition for habeas corpus reads, in pertinent part:

Petitioner's counsel has serious doubts about his client's competency to proceed with an extradition hearing. Petitioner is an elderly man in poor health, who is under tremendous strain, and who has been transported back and forth to Springfield, Illinois, due to errors committed by the Fulton County [authorities]. Counsel does not believe his client fully understood what transpired at his last two proceedings in Fulton County. Counsel's concerns on his client's mental status are shared by Petitioner's family. Also, the Illinois State's Attorney has alleged that Petitioner has suffered from a mental illness since 1964 and that the mental illness persists to the present.

[4] In an affidavit attached to Oliver's amended petition, Oliver's son averred, in pertinent part:

During my conversations with [Oliver], his attention often wanders and he has difficulty sticking to the topic that we are speaking about. Often his conversation is erratic and irrational. Some days he is better than others. . . . I find it very difficult to get him to focus on the extradition issue. . . . I do not know if he understands what it is all about and the consequences involved in his being returned to and standing trial in Illinois.

The amended petition was also accompanied by a 1964 psychiatrist's report showing that Oliver was a "deteriorating but not yet fully deteriorated schizophrenic personality" and was "very close" to being psychotic. These documents shed little, if any, light on Oliver's present ability to assist counsel with respect to the issues in question.