**STATE ex rel. Joe REED, Relator,**

v.

**The Honorable Thomas J. FRAWLEY, Judge, Circuit Court of St. Louis City, Respondent.**

**No. SC 83408.**

Supreme Court of Missouri,
En Banc.

Nov. 20, 2001.

---

Daniel E. Underwood, Office of Public Defender, St. Louis, for relator.

Susan Guerra, Division of Family Court of St. Louis City, St. Louis, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

WILLIAM RAY PRICE, JR., Judge.

Joe Reed, a minor, is charged with armed robbery and aggravated vehicular hijacking in Illinois. Illinois seeks to have Reed extradited from Missouri in order to face these charges. Reed petitions this Court for a writ of mandamus or, in the alternative, a writ of prohibition to require that a hearing be held to determine whether or not he is competent to understand and assist his counsel in defending against the extradition. This Court granted a preliminary writ in prohibition on March 20, 2001. We now make that writ absolute.

## I. Facts

On April 26, 2000, a petition was filed in the juvenile division of the circuit court of the City of St. Louis alleging that Joe Reed, a minor, had committed various criminal offenses within the City of St. Louis on April 25, 2000. Those offenses include tampering in the first degree, murder in the second degree, and unlawful use of a weapon.

During the course of the proceedings to certify Reed to stand trial as an adult, he was examined by two different psychiatrists, one procured by his defense counsel and one assigned by the Missouri Department of Mental Health. Both doctors

reached the conclusion that Reed lacked the capacity to participate in the certification hearing, as he did not understand the proceedings against him and was unable to assist in his own defense.

On June 16, 2000, a criminal indictment against Reed was filed in the Twentieth Judicial Circuit Court, St. Clair County, Illinois. On August 29, 2000, the St. Clair County state attorney's office requested the extradition of Reed to the State of Illinois based on the indictment.

On October 5, 2000, the governor of Missouri issued a rendition warrant. The warrant alleged that the state of Illinois had demanded extradition of Reed as a person charged with a crime in the state of Illinois who had subsequently been found in the state of Missouri.

On October 5, 2000, Reed filed a motion to stay the extradition and a request for a competency hearing. The motion alleged that Reed is unable to assist in his own defense, assist his attorney, or understand the trial process. The motion further argued that it would be a violation of Reed's constitutionally protected right to effective assistance of counsel if the court were to proceed with the extradition hearing without first determining his competency.

On December 19, 2000, Reed's motion to stay and request for a competency hearing was denied by the juvenile division of the circuit court of the City of St. Louis. The court held that there was no constitutional right to a determination of competency prior to an extradition hearing and that the issue of competency was not relevant in extradition proceedings.

This Court issued a preliminary writ in the matter on March 20, 2001.

## II. Discussion

■ Joe Reed argues that both state and federal law require that he be competent to participate in an extradition hearing. Because section 548.101, RSMo 2000, controls this issue, it is unnecessary to reach any further issues.

Missouri, like many other states, has patterned its extradition law after the language of the Uniform Criminal Extradition Act, which was adopted in Missouri in 1953. Chapter 548 makes it the duty of the governor of Missouri to "have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this state." Section 548.021, RSMo 2000.[1]

Any individual who is arrested upon an extradition warrant in Missouri has certain rights to challenge their extradition. Section 548.101 provides that:

No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, *and that he has the right to demand and procure legal counsel*; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be

---

1. Rule 35.01 provides that "[t]he provisions of Chapter 548, RSMo, shall govern procedure in extradition."

given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state.

Section 548.101, RSMo 2000 (emphasis added).

▮▮ A right to counsel is an "empty formality" if it is not also assumed that the assistance of counsel must be effective. *In the Interest of J.C., Jr.,* 781 S.W.2d 226, 228 (Mo.App.1989). Such a right becomes meaningless "as the sound of tinkling brass" if an accused lacks mental capacity to knowingly and intelligently confer with counsel respecting the charges or issues brought against him and to assist counsel by means of supplying information pertinent to those issues. *State ex rel. Vaughn v. Morgett,* 526 S.W.2d 434, 436 (Mo.App. 1975).

In *State ex rel. Juergens v. Cundiff,* this Court examined statutory language that required probationers to receive notice and an opportunity to be heard before their probation could be revoked. 939 S.W.2d 381, 382 (Mo.1997). The Court noted that "[t]he general assembly afforded these rights to probationers; therefore, it can hardly be imagined that the general assembly did not intend for probationers to proceed to hearing without having capacity to exercise them." *Id.* at 382. The same

logic applies in the construction of section 548.101. For the general assembly's grant of a right to counsel to be meaningful in an extradition context, it must ensure that an accused has enough competence to understand the extradition proceeding and to assist counsel.[2]

▮▮ Judicial review of the issuance of a governor's extradition warrant is limited to determining whether the governor exceeded his authority in issuing the rendition warrant. *Seger v. Camp,* 576 S.W.2d 722, 724 (Mo.1978). In examining the issuance of an extradition warrant, the issues a court may address are:

(1) that the person is demanded as a fugitive from justice;

(2) that there is an indictment or affidavit produced charging the person demanded with having committed a crime; and,

(3) that the papers have been certified as authentic by the demanding state.

*Id.*[3] As to these issues, Reed must possess "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *State v. Tokar,* 918

---

2. *Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913), held that issues of competence as a defense to alleged crimes and as to a person's capacity to stand trial for those crimes are properly heard in the courts of the state requesting extradition. We agree. Our decision is limited to an individual's competency regarding solely the extradition hearing.

3. Other states have adopted various forms of a four-part analysis in the extradition context, based on the language of the United States Supreme Court's decision in *Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) (an extradition proceed-

ing determines: (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive) *see Oliver v. Barrett,* 269 Ga. 512, 500 S.E.2d 908, 909 (1998); *State v. Tyler,* 398 So.2d 1108, 1111 (La. 1981); *In re Hinnant,* 424 Mass. 900, 678 N.E.2d 1314, 1318 (1997); *State ex rel. Jones v. Warmuth,* 165 W.Va. 825, 272 S.E.2d 446, 448 (1980). Missouri courts have developed a three-part test that simply combines parts (b) and (c) of the *Doran* test.

S.W.2d 753, 762 (Mo.1996).[4] Reed has the burden to show that he lacks the competence necessary to proceed. *State v. Frezzell,* 958 S.W.2d 101, 104 (Mo.App.1998); *see also* Section 552.020.8, RSMo 2000. As a practical matter, we would expect the focus to be upon whether Reed seeks to oppose extradition and whether he is a fugitive from justice in Illinois.

## III. Conclusion

The preliminary writ in prohibition is made absolute. The trial court is prohibited from proceeding with the extradition hearing until it has determined the competency of Joe Reed to understand and assist counsel regarding the limited issues therein.

All concur.

---

**4.** Other states have split on this issue. *See Kostic v. Smedley,* 522 P.2d 535, 538–39 (Alaska 1974); *Pruett v. Barry,* 696 P.2d 789, 793 (Colo.1985); *State of Florida ex rel. Buster v. Purdy,* 219 So.2d 43, 43 (Fla.App.1969); *Oliver v. Barrett,* 269 Ga. 512, 500 S.E.2d 908, 910 (1998); *Brewer v. Turner,* 165 Kan. 330, 194 P.2d 507, 511 (1948); *Kellems v. Buchignani,* 518 S.W.2d 788, 788 (Ky.App.1974); *State v. Tyler,* 398 So.2d 1108, 1112 (La. 1981); *In re Hinnant,* 424 Mass. 900, 678 N.E.2d 1314, 1318–21 (1997); *State ex rel. Davey v. Owen,* 133 Ohio St. 96, 12 N.E.2d 144, 149 (1937); *Ex Parte Potter,* 21 S.W.3d 290, 297 (Tex.Crim.App.2000); *State ex rel. Jones v. Honorable Richard A. Warmuth,* 165 W.Va. 825, 272 S.E.2d 446, 451–52 (1980).