322 S.E.2d 862

**In the Matter of the Application of Betty Ann CRONAUER For a Writ of Habeas Corpus**

v.

**STATE of West Virginia.**

**No. 16107.**

Supreme Court of Appeals of West Virginia.

Nov. 21, 1984.

Dissenting Opinion Feb. 13, 1985.

Benjamin N. Snyder, Clendenin, for appellant.

Catherine A. McMullen, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Chief Justice:

This action is before this Court upon the appeal of Betty Ann Cronauer, the appellant and petitioner below, from a final order of the Circuit Court of Clay County in which that court denied the appellant's petition for a writ of habeas corpus. The appellant was seeking habeas corpus relief from her arrest and custody pursuant to a warrant upon requisition (rendition warrant) issued by the Governor of West Virginia in response to a request from the Governor of California for the appellant's extradition to that state. The appellant had been charged in California with violating a penal statute relating to child custody. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

In May, 1980, a North Carolina court appointed the appellant guardian of the estate of five children of her deceased husband. The appellant is the stepmother of the five children. Two months later, Jennifer Reese, a half sister to the five children, traveled to North Carolina and removed the children to Orange County, California. Soon thereafter, Reese filed a petition in the Superior Court of Orange County, Cali-

fornia seeking guardianship of the persons and estates of the children. On July 31, 1980, the Superior Court entered an order that stated: "[P]ending hearing on this Petition for Guardianship on August 21, 1980, the minors are ordered to remain where they are, and as to the minors present, no person may remove them from Orange County pending the hearing." Reese was finally appointed full guardian of the five children on May 22, 1981.

The petition for appeal states that in February, 1981, the appellant removed two of the children from Orange County, California and transported them back to North Carolina. In March, 1981, Reese filed in California a complaint against the appellant charging a violation of Cal.Penal Code § 278 [West 1976], which makes it unlawful for any person to maliciously take a child from the lawful custody of another.[1] A warrant was issued for the appellant's

arrest, however, the State of North Carolina refused to extradite the appellant to California upon request of the governor of that state.[2] In September, 1981, a North Carolina court ordered the appellant to return the two children to Reese and she complied; and the appellant's guardianship over the estates of the five children was thereafter terminated.

In December, 1981, the appellant was arrested in Clay County, West Virginia, upon a warrant issued against her as a fugitive from justice. The appellant was released on bond posted by her mother from North Carolina. However, the appellant was later ordered recommitted to the county jail for a period of 60 days and her bond forfeited pursuant to *W.Va.Code*, 5–1–9(h) [1937].[3]

On August 5, 1982, the Governor of the State of West Virginia issued a rendition

---

**1.** Section 278 of the *Cal.Penal Code* in effect at the time of the offense provided as follows:
(a) Every person, not having a right of custody, who maliciously takes, entices away, detains or conceals any minor child with intent to detain or conceal such child from a parent, guardian, or other person having the lawful charge of such child shall be punished by imprisonment in the state prison for a period of not more than 10 years, a fine of not more than ten thousand dollars ($10,000), or both, or imprisonment in a county jail for a period of not more than one year, a fine of not more than one thousand dollars ($1,000), or both.
(b) A child who has been detained or concealed in violation of subdivision (a) shall be returned to the person having lawful charge of the child. Any expenses incurred in returning the child shall be reimbursed as provided in Section 4605 of the Civil Code. Such costs shall be assessed against any defendant convicted of a violation of this section.
1976 *Cal.Stat.* ch. 1399. Section 278 has since been amended to, *inter alia*, reduce the possible imprisonment in the state prison from not more than 10 years to "two, three or four years...." *Cal.Penal Code* § 278 [West 1983].

**2.** The record indicates that North Carolina refused to extradite the appellant to California because of a dispute over jurisdiction. In a letter dated August 5, 1981, an official of the governor's office of North Carolina informed the Governor of California as follows:
After much thought and consideration it is with regret that Governor Hunt has decided to deny your request for the extradition of the above-named. Our information reveals that BETTY ANN CRONAUER was made general

guardian on May 20, 1980, some two months before Ms. Reese even initiated proceedings in California. Therefore, it is the opinion of this office that this particular action afforded North Carolina jurisdiction in this case. Also, this matter should more properly be decided in the civil courts.

**3.** *W.Va.Code*, 5–1–9(h) [1937], provides as follows:
If the accused is not arrested under warrant of the governor by the expiration of the time specified in the warrant or bond, a judge or justice may discharge him or may recommit him for a further period not to exceed sixty days, or a judge or justice may again take bail for his appearance and surrender as provided in subdivision (g) of this section, but within a period not to exceed sixty days after the date of such new bond.
The record indicates that neither the appellant nor her counsel appeared for a hearing, held December 28, 1981, before a Clay County magistrate, upon the State's motion to recommit the appellant. On January 15, 1982, the State further moved the Circuit Court of Clay County for the issuance of a capias for the arrest of the appellant for her failure to appear at the December 28, 1981 hearing. The appellant failed to appear in person at the January 15, 1982 hearing but was represented by counsel. The circuit court issued the capias for the arrest of the appellant and her confinement in the county jail for a period not to exceed the original commitment of sixty days. The State moved to continue consideration of its Motion for Default of Judgment and such motion was granted by the court.

warrant for the appellant's arrest based upon a request for her extradition from the Governor of the State of California. The rendition warrant and requisition from California both stated, *inter alia:* "Betty Ann Cronauer stands charged with the crime of violation of a child custody order...." The appellant had remained a fugitive until September 3, 1982, when a hearing was held in the Circuit Court of Clay County upon the State's motion for forfeiture of the appellant's bail. At this time, the appellant was arrested on the Governor's rendition warrant.

The appellant thereafter filed a petition for a writ of habeas corpus in the Circuit Court of Clay County pursuant to the provisions of *W.Va.Code,* 5-1-9 [1937], alleging that her arrest and confinement in the county jail was illegal because the face of the extradition documents issued by the Governor of West Virginia and the Governor of California did not clearly charge that a crime had been committed under California law. After a hearing upon the matter, the circuit court denied the petition but stayed execution of the extradition pending appeal to this Court.

The issues presented to this Court by the appellant are (1) whether the trial court erred when it ruled that the rendition warrant issued by the Governor of West Virginia contained a sufficient statement concerning the crime with which the appellant is charged in California, and (2) whether supporting documents may be examined by the circuit court when making such a determination.[4]

■ This Court has established limitations upon the scope of inquiry for a circuit court when presented with a petition for a writ of habeas corpus by an accused resisting extradition to another state. These limitations are consistent with federal constitutional guidelines established by the United States Supreme Court in *Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521, 527 (1978).[5] In syllabus point 2 of *State ex rel. Mitchell v. Allen,* 155 W.Va. 530, 185 S.E.2d 355 (1971), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2048, 32 L.Ed.2d 333 (1972), we held as follows:

> In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers.

*See also* syl. pt. 2, *Wooten v. Hatfield,* 169 W.Va. 401, 287 S.E.2d 516 (1982); syl.

---

4. The appellant's arguments focus upon the sufficiency of the language contained in the rendition warrant issued by the Governor of West Virginia and the extent to which a circuit court, in a habeas corpus proceeding challenging custody pursuant to extradition proceedings, may look to supporting documents from the demanding state to determine the sufficiency of the rendition warrant. Although the appellee discusses the issue of whether there is an actual charge pending against the appellant in California, we conclude that such issue was not raised by the appellant before the circuit court nor is it raised before this Court.

5. Interstate extradition of fugitives is primarily controlled by federal law and has its origins in article IV, section 2 of the Constitution of the United States, which provides:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State,

shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

*See State ex rel. Jones v. Warmuth,* 165 W.Va. 825, 272 S.E.2d 446, 448 (1980). Under this provision Congress is authorized to regulate interstate extradition and has done so in 18 U.S.C. § 3182 [1948], and its predecessors. *See Innes v. Tobin,* 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916); *Roberts v. Reilly,* 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885). *See generally* 31 Am. Jur.2d *Extradition* § 4 (Supp.1984); 35 C.J.S. *Extradition* § 2 (Supp.1984). The states are empowered, however, to enact legislation to regulate the details of extradition procedure and most states, including West Virginia, have adopted the Uniform Criminal Extradition Act. *W.Va.Code,* 5-1-7 to 5-1-13; *see Brightman v. Withrow,* 172 W.Va. 235, 304 S.E.2d 688 (1983). *See generally* Uniform Criminal Extradition Act, 11 U.L.A. 51 (Supp.1984).

pt. 1, *State ex rel. Gonzales v. Wilt*, 163 W.Va. 270, 256 S.E.2d 15 (1979).

In the first instance, the appellant contends that the form of the rendition warrant issued by the Governor of West Virginia is invalid because it fails to state the crime with which the appellant is charged in California. As noted above, the rendition warrant states that "Betty Ann Cronauer stands charged with the crime of violation of a child custody order committed in the County of Orange in said State of California."

■ In West Virginia, the procedures surrounding the interstate extradition of fugitives are controlled by the Uniform Criminal Extradition Act, *as amended*, *W.Va.Code*, 5-1-7 to 5-1-13. *See supra* note 4. Under the Act, it is the duty of the executive authority of this State to arrest and deliver to the executive authority of any other state "any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this State...." *W.Va.Code*, 5-1-7(b) [1937].

The request for extradition from the demanding state, however, must contain a number of written documents. *W.Va. Code*, 5-1-7(c) [1937], provides:

No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under subdivision (g) of this section,[6] that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found, or by information supported by affidavit, in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate or

justice there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information, or affidavit made before the magistrate or justice must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand.

The request for extradition from the demanding state must also include an "affidavit or sworn evidence that the demand or application is made in good faith for the punishment of crime, and not for the purpose of collecting a debt or pecuniary mulct, or of removing the alleged fugitive to a foreign jurisdiction with a view to serve him there with civil process." *W.Va. Code*, 5-1-7(b) [1937]. The procedures required of the demanding state must comply with the "clear and unambiguous" language of this statute or extradition will be denied. Syl. pt. 1, *Locke v. Burns*, 160 W.Va. 753, 238 S.E.2d 536 (1977).

With respect to the issuance of a rendition warrant, *W.Va.Code*, 5-1-8(a) [1937], further provides:

If the governor decides that the demand should be complied with, he shall sign a warrant of arrest which shall be sealed by the secretary of state with the great seal of this State, and be directed by the governor to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant must *substantially* recite the

---

6. *W.Va.Code*, 5-1-7(g) [1937], provides:

The governor of this State may also surrender, on demand of the executive authority of any other state, any person in this State charged in such other state in the manner provided in subdivision (c) of this section, with committing an act in this State, or in a third state, intentionally resulting in a crime in the state whose executive authority is mak-

ing the demand, and the provisions of this article not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom. The constitutionality of subsection (g) was established in syllabus point 1 of *Cassis v. Fair*, 126 W.Va. 557, 29 S.E.2d 245 (1944).

facts necessary to the validity of its issuance.

(emphasis added).

In *Squadroni v. Smith*, 349 S.W.2d 700 (Ky.1961), the Governor of Kentucky issued a rendition warrant for the arrest and extradition of the appellant Smith upon request of the Governor of Indiana. The rendition warrant charged the appellant with "[f]ailure to provide for children." The Court of Appeals of Kentucky, interpreting the identical language contained in *W.Va.Code*, 5–1–8(a) [1937], upheld the validity of the rendition warrant and stated as follows:

> As we construe these statutes, the indictment, information or affidavit sent to the Governor of this state by the demanding state must substantially charge the crime in question, but the warrant of arrest issued by the Governor of this state need only state the fact that such an indictment, information or affidavit has been received and described in general terms of identification the offense charged. It is not necessary that the warrant of arrest state all of the elements of the offense with the particularity required of an indictment; it is sufficient if it gives reasonable notice of the nature of the crime charged.

349 S.W.2d at 701. *See, e.g., Griggs v. State*, 481 P.2d 388 (Alaska 1971) (the charge of "robbery" in a rendition warrant was sufficient even though petitioner was actually wanted for parole violations of previous robbery conviction); *In re Dean*, 254 A.2d 242 (Del.1969) (charge of "escape" in rendition warrant was substantial recitation of facts although petitioner was actually wanted for escape from commitment stemming from entirely different crime); *People ex rel. Halley v. Willis*, 46 Ill.2d 29, 262 N.E.2d 480 (1970) (statement in rendition warrant that petitioner charged with "unlawful imprisonment and transportation out of this state" held sufficient); *Holland v. Harger*, 274 Ind. 156, 409 N.E.2d 604 (1980) (inclusion of the word "kidnapping" and specific date of offense in rendition warrant held substantial recitation of the facts); *Ex parte Carroll*, 474 S.W.2d 923 (Tex.Crim.App.1972) (charge in rendition

warrant of "possession of pistol after conviction of a violent crime" held substantial recitation of facts); *Ex parte Buffington*, 439 S.W.2d 345 (Tex.Crim.App.1969) (charge in rendition warrant of "possession of narcotic drug" held substantial recitation of facts); *Ex parte Chapman*, 435 S.W.2d 529 (Tex.Crim.App.1968) (a charge of "child desertion" in rendition warrant held substantial recitation of facts); *Ex parte Hagar*, 434 S.W.2d 675 (Tex.Crim.App.1968) (a charge of "child abandonment" in rendition warrant held substantial recitation of facts); *Ex parte Harris*, 375 S.W.2d 453 (Tex.Crim.App.1964) (a charge of "fugitive from justice, having violated his probation" held substantial recitation of the facts); *State ex rel. Keehn v. Capelle*, 17 Wis.2d 116, 115 N.W.2d 487 (1962) (charge in rendition warrant of "child stealing" held substantial recitation of the facts for the petitioner's extradition to California for prosecution of violation of section 278 of the California Penal Code).

It is also well settled that "the underlying documents may be examined to see if they can serve as a valid basis for a governor's rendition warrant." *State v. Ritter*, 74 Wis.2d 227, 232, 246 N.W.2d 552, 555 (1976); *see Aldio v. State*, 44 Ala.App. 303, 208 So.2d 212 (1967); *Ex parte Fontes*, 475 S.W.2d 781 (Tex.Crim.App.1972); *Ex parte DuBois*, 156 Tex.Crim. 463, 243 S.W.2d 698 (1951); *see also Sollinger v. McNeel*, Colo. 656 P.2d 701 (1983); *Videan v. State*, 68 Idaho 269, 194 P.2d 615 (1948).

Based upon the foregoing, we hold that a rendition warrant issued by the Governor of this State under *W.Va.Code*, 5–1–8(a) [1937], in response to a request for extradition from the executive authority of a demanding state pursuant to the Uniform Criminal Extradition Act, *as amended*, *W.Va.Code*, 5–1–7 to 5–1–13, "substantially recite[s] the facts necessary to the validity of its issuance" with respect to the crime charged therein, as required by *W.Va. Code*, 5–1–8(a) [1937], if the rendition warrant contains a statement that gives the person sought to be extradited reasonable notice of the nature of the crime charged in

the demanding state; and a circuit court, when determining the sufficiency of a rendition warrant in a habeas corpus proceeding challenging the validity of custody in connection with extradition proceedings, may examine underlying documents filed by the demanding state in support of its request for extradition.

Among the underlying documents that accompanied the rendition warrant and were part of the record considered by the circuit court during the habeas corpus proceeding, were the requisition for extradition from the Governor of California; the application for such requisition from Frank Moy, Deputy District Attorney of Orange County, California; an affidavit of George Troup, Investigator for the Orange County District Attorney's office setting forth his findings upon investigation of the matter; an affidavit of Moy attesting to his finding of probable cause based upon the investigation of Troup; a certified copy of the original complaint filed by Reese against the appellant in the Municipal Court, Central Judicial District, of Orange County, California; the temporary custody order entered July 31, 1980 by the Superior Court of Orange County, California; and a certified copy of the felony warrant issued by the Municipal Court for the appellant's arrest.

We are of the opinion that the statement contained in the rendition warrant that the appellant "stands charged with the crime of violation of a child custody order" gave reasonable notice to the appellant of the nature of the crime with which she is charged in California. According to the supporting documents, the appellant is charged by complaint and affidavit with a violation of section 278 of the California Penal Code which prohibits the malicious taking, enticing away, detainment or concealment of a minor child from the person who has legal custody of that child. *See supra* note 1. In the order entered July 31, 1980, by the Superior Court of Orange County, California, in response to the petition for guardianship of the five children by Jennifer Reese, temporary custody of the children was given to Reese and the

court further ordered that the children were not to be removed from the county pending resolution. The supporting documents reveal that the appellant allegedly violated such order and section 278 of the California Penal Code when she subsequently removed two of the children from Orange County to North Carolina. Under these circumstances, it is clear that, by virtue of the statement contained in the rendition warrant and the contents of the supporting documents, the appellant was given reasonable notice of the nature of the crime with which she is charged in California. In this respect, the trial court did not err when it denied the appellant's petition for a writ of habeas corpus.

Based upon all of the above, the order of the Circuit Court of Clay County denying the appellant's petition for a writ of habeas corpus is hereby affirmed.

Affirmed.

McGRAW, Justice, dissenting:

The rendition warrant and requisition from California stated that the appellant was charged with "the crime of violation of a child custody order." Although violation of a child custody order could perhaps be prosecuted as criminal contempt, it is not the crime proscribed by Cal.Penal Code § 278 (West Supp.1984). The heading of the chapter under which this section of the California Code is found is clearly denominated "child abduction." The appellant was not charged with "child abduction" under the rendition warrant and requisition, nor was she charged with "criminal contempt." Instead, she was charged with "violation of a child custody order." Unless California Superior Court child custody orders are considered criminal statutes, their violation cannot be considered crimes. The authorities cited by the majority for the proposition that the phrase "violation of a child custody order" substantially recites the facts necessary to the validity of the issuance of the rendition warrant in this case are inapposite. Although not models of clarity, each of the rendition warrants involved in the cases cited charged violations of criminal statutes, and

not violations of judicial orders. For example, in *State ex rel. Keehn v. Capelle,* 17 Wisc.2d 116, 115 N.W.2d 487 (1962), the rendition warrant charged the petitioner with "child stealing" in violation of Cal.Penal Code § 278. In 1962, the heading of the chapter under which section 278 of the California Penal Code was found was denominated "child stealing." *See* Cal.Penal Code § 278 (West 1970). Therefore, the rendition warrant charging the petitioner with "child stealing" provided clear notice of the crime with which the petitioner was charged. In the instant action, however, it was at best ambiguous as to what crime the appellant was charged with perpetrating. Even in light of the availability of supporting documents, it was uncertain whether she was charged with criminal contempt or child abduction. I believe such uncertainty violated the appellant's right to procedural due process under the federal and state constitutions. Therefore, under law, justice dictates that the relief requested be granted.