375 S.E.2d 213

**STATE of West Virginia ex rel. Thomas A. DRESCHER**

v.

**Jerry A. HEDRICK, Warden, West Virginia Penitentiary.**

**No. 18268.**

Supreme Court of Appeals of West Virginia.

Nov. 18, 1988.

Mark A. Karl, Moundsville, for SER Thomas A. Drescher.

Thomas E. White, Pros. Atty. of Marshall Co., Moundsville, for Jerry Hedrick.

PER CURIAM:

This case is before the Court upon the appeal of Thomas A. Drescher from the August 13, 1987 order of the Circuit Court of Marshall County which denied the appellant's writ of habeas corpus to halt his extradition to the state of California. The appellant contends that the trial court erred in denying the writ as he had sufficiently proven through clear and convincing evidence that he was not a fugitive from justice.

Pursuant to the Interstate Compact on Detainers, adopted in *W. Va. Code*, 62–14–1, *et seq.* [1977], the Governor of California formally filed a demand for the rendition of Thomas Drescher, who was incarcerated in the West Virginia Penitentiary. The demand annexed, among other things, an arrest warrant for the capital crime of "murder with special circumstances" issued by a Los Angeles County, California, magistrate, as well as the supporting affidavit of the Los Angeles County investigating officer. The supporting affidavit was properly sworn and subscribed by the magistrate issuing the warrant.

The investigating officer's affidavit relayed an account of the crime. The victim was a former resident of the New Vrindaban religion community near Moundsville,

West Virginia. New Vrindaban is affiliated with the International Society of Krishna Consciousness (ISKON), commonly called the Hare Krishna. The victim eventually relocated in Los Angeles County, California. On Thursday, May 22, 1986, at approximately 12:30 a.m., Pacific Time, the victim left a friend's home in a van.[1] At 10:00 a.m., Pacific Time, the victim's body was found in the van.[2]

The officer further averred that he was contacted by members of the West Virginia Department of Public Safety on May 27, 1986. West Virginia officers arrested Drescher on another matter, and pursuant to the arrest recovered from Drescher items containing the names of the victim and the victim's friend, as well as a description of the friend's automobile.

The affidavit concluded with the officer's interview of an unnamed informant who had been hospitalized due to an explosion at his home. The officer tape recorded the informant's account of Drescher confessing to the informant that he had contracted with members of the Hare Krishna community to kill the victim and that Drescher flew from Ohio to Los Angeles and killed the victim with a .45 caliber revolver.

After reviewing the documents, the Governor of the State of West Virginia issued a rendition warrant for Thomas A. Drescher. Drescher petitioned for a writ of habeas corpus pursuant to *W.Va.Code*, 5-1-9 [1937] and a hearing was conducted on the matter in the Circuit Court of Marshall County. At the hearing Drescher introduced evidence to challenge his status as a fugitive from justice by producing four witnesses to establish that he was not in the demanding state on Thursday, May 22, 1986, the date of the crime.

The four witnesses were Hare Krishna devotees who attended a festival that was apparently held on Tuesday, May 20, 1986,

through Thursday, May 22, 1986 in Columbus, Ohio. Two witnesses testified that they saw Drescher Wednesday "afternoon" and Thursday "morning." One witness testified that he saw Drescher exiting his automobile "early" Thursday morning. A fourth witness testified that he could not recall when he saw Drescher during the festival.

The appellee produced the testimony of the Los Angeles County investigating officer. Pursuant to a search warrant, the officer had recovered a rental agreement and additional forms from an automobile rental agency in Los Angeles County. The agreement reveals that an automobile was rented on Tuesday, May 20, 1986, at 8:00 a.m., Pacific Time, and returned on Thursday, May 22, 1986, at 7:30 a.m., Pacific Time. The rental agreement and attendant papers list the lessee as Thomas Drescher and contain personal and credit data relating to the Moundsville, West Virginia, area, as well as driver's license and social security numbers. From this information, the arresting officer identified the appellant as the man appearing in the driver's license photo which matched the license number on the rental agreement. A documents examiner of the West Virginia Department of Public Safety compared two signatures on the rental papers with three known signatures of the appellant and opined that the appellant probably signed the rental papers, as several characters in the compared signatures were similar and there were no significant dissimilarities between them.

Based on the evidence, the trial judge denied the writ. Extradition was stayed, pending appeal.

 Extradition is a constitutionally founded right of states which guarantees that one state may avail upon another state to secure the return of a fugitive from

---

1. The affidavit states that this information is based on the friend's statement to the investigating officer.

2. The victim had been shot twice in the head with a .45 caliber revolver.

justice. *U.S. Const.* art. IV, § 2, clause 2.[3] Since the right to demand extradition and the correlative duty to extradite rest solely with the executives of the demanding and asylum states, judicial intervention is limited. *Drew v. Thaw,* 235 U.S. 432, 35 S.Ct. 137, 59 L.Ed. 302 (1914); *Munsey v. Clough,* 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515 (1905).

The sole role of the judiciary in this regard is to insure that the accused has properly been identified as a fugitive from justice. Syl. pt. 2, *State ex rel. Blake v. Doeppe,* 97 W.Va. 203, 124 S.E. 667 (1924). These requirements are reviewed to ensure that the executives have complied with the constitutional and statutory requirements for extradition which are jurisdictional. 35 C.J.S., *Extradition,* § 4. Therefore, upon application, the courts in habeas corpus review, must determine whether the executive of the asylum state acted within his authority to deliver the person demanded. 35 C.J.S, *Extradition,* § 4. This is a summary proceeding merely to ensure that the executive has acted within his authority, rather than a determination of guilt or innocence of the person demanded. *California v. Superior Court of California,* 482 U.S. 400, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987).

This Court acknowledged the traditionally limited role of the judiciary in extradition matters in syllabus point 1 of *State ex rel. Gonzales v. Wilt,* 163 W.Va. 270, 256 S.E.2d 15 (1979):

'In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers.' Point 2, Syllabus, *State ex rel. Mitchell v. Allen,* 155 W.Va. 530, 185 S.E.2d 355 (1971).

In the habeas corpus proceeding below, appellant Drescher presented evidence concerning the third area of inquiry, whether he was present in the demanding state at the time the criminal offense was committed. By doing so, appellant placed his identity as a fugitive from justice, as alleged in the rendition warrant, in issue.[4]

When such a challenge is made, a writ of habeas corpus is issued when the petitioner at the proceeding has proven through "clear and convincing" evidence that he was not in the demanding state at the time

---

**3.** *U.S. Const.* art. IV, § 2, clause 2 reads:

A person charged in any State with Treason, Felony, or other Crime who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
*See also* 18 U.S.C. § 3182 (1948), the requirements of which have been incorporated into West Virginia law in *W.Va.Code,* 5–1–1, *et seq.* [1923].

**4.** An identity challenge in an extradition proceeding concerning the petitioner's absence from the demanding state during the commission of the crime is distinguishable from an alibi defense at trial. An alibi defense is in response to the criminal charge, which goes to guilt or innocence, and is therefore the sole concern of the demanding state. Wharton, Criminal Procedure, *Extradition,* § 128 (12th ed.1974). Whereas, proof that the petitioner at the habeas corpus proceeding was not in the demanding state during the commission of the crime challenges whether the person named in the rendition warrant is the petitioner at the habeas corpus proceeding. If not, then a writ would be issued as the executive violated his constitutional and statutory duties in issuing the warrant without first determining that the petitioner is a fugitive from justice. Syl. pt. 2, *Lott v. Bechtold,* 169 W.Va. 578, 289 S.E.2d 210 (1982); *Matter of Extradition of Demjanjuk,* 612 F.Supp. 544, 548–9 (N.D.Ohio 1985), appeal dismissed, *U.S. v. Demjanjuk,* 762 F.2d 1012 (6th Cir.1985); *Smith v. State of Idaho,* 373 F.2d 149, 156–7 (9th Cir.1967), *cert. denied,* 388 U.S. 919, 87 S.Ct. 2139, 18 L.Ed.2d 1364 (1967); Wharton, *supra,* § 127.

of the commission of the crime. Syl. pt. 2, *Lott v. Bechtold,* 169 W.Va. 578, 289 S.E.2d 210 (1982).[5]

 In this case, the accused offered several witnesses who testified that they saw Drescher on the "afternoon" (Eastern Standard Time) of the day prior to the murder and one witness testified that he saw Drescher "early" on the morning (Eastern Standard Time) of the murder. Besides the affidavit of the arresting officer, which was properly annexed to the rendition warrant,[6] the appellees also produced the car rental forms, from which the signatures and license photo were obtained, which indicated that Drescher was in Los Angeles county and rented an automobile during the time in which the crime was committed.

In *Lott v. Bechtold,* 169 W.Va. 578, 289 S.E.2d 210 (1982), Lott, the named fugitive from justice in a rendition warrant, produced at a habeas corpus proceeding, his alleged co-conspirator in a crime committed in a foreign jurisdiction. The co-conspirator recanted his previous statement concerning Lott's presence in the demanding state, as well as Lott's guilt of the crime.

A witness also testified that Lott was with her, in the asylum state, during the exact time that the crime was committed in the demanding state. The respondent introduced an eyewitness identification of Lott through the hearsay testimony of the investigating officer in the demanding state. The officer's affidavit annexed to the rendition demand also revealed that the "getaway car" for the crime was registered in Lott's name. This Court affirmed the trial judge's denial of a writ of habeas corpus. In doing so, the Court stated that "it is uniformly held that where the evidence is merely conflicting as to the defendant's fugitive status, he is not entitled to discharge in habeas corpus after being apprehended pursuant to an extradition proceeding [citations omitted]." *Lott v. Bechtold,* 169 W.Va. 578, 583, 289 S.E.2d 210, 213 (1982).

In this case, none of the appellant's witnesses testified that they saw the accused during the exact time that the crime was committed. Besides the affidavit annexed to the rendition warrant, the appellee also supplied evidence that the appellant "probably" signed the rental forms in California

---

**5.** Several jurisdictions continue to apply *South Carolina v. Bailey,* 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933), which requires the petitioner at the proceeding to prove his absence from the demanding state during the commission of the crime beyond a reasonable doubt, or conclusively. *State v. Perrera,* 443 So.2d 1016 (Fla.App. 1983); *State v. Whitt,* 753 S.W.2d 369 (Tenn.Cr. App.1988); *Manning v. Commonwealth of Virginia,* 1 Va.App. 60, 334 S.E.2d 151 (1985); *State ex rel. Channell v. Murphy,* 202 Md. 650, 96 A.2d 473 (1953), *cert. denied,* 346 U.S. 824, 74 S.Ct. 40, 98 L.Ed. 349 (1953). *See also* Bellacosa, J., concurring in *People v. Comm'r of N.Y. Dept. of Corrections,* 71 N.Y.2d 881, 527 N.Y.S.2d 762, 522 N.E.2d 1060 (1988). *South Carolina v. Bailey* has not been overruled and extradition is a federal question.

However, "clear and convincing" evidence in regard to the petitioner's absence from the demanding state has been defined as that which "'clearly and satisfactorily' or 'conclusively' proves absence ... 'the question of alibi is not open for consideration if there is fair evidence that the appellant was at the place of the crime at the time of it.'" *State ex rel. Wagner v. Hedman,* 292 Minn. 358, 360, 195 N.W.2d 420, 422 (1972); *accord, Lott v. Bechtold,* 169 W.Va. 578, 583–84, 289 S.E.2d 210, 213 (1982); *Kostic v. Smedley,* 522 P.2d 535 (Alaska 1974); *Watson v. Montgomery,* 431 F.2d 1083 (5th Cir.1970).

**6.** The affidavit accompanying a demand for rendition which is properly executed is uniformly considered when determining a person's fugitive status as these papers were examined by the executive when he determined that the rendition warrant should be issued, and it is this decision on fugitive status that is at issue in the habeas proceeding. *Lott v. Bechtold,* 169 W.Va. 578, 289 S.E.2d 210 (1982) (affidavit annexed to rendition demand identifying alleged fugitive's automobile registration number with "getaway" car used to establish identity). Wharton, *supra,* § 125; F. Cleckley, *Handbook on Criminal Procedure,* I–53 (1988 cum. supp.).

**40**

on the operative dates, and provided an in-court identification between the license photograph and the appellant by the Los Angeles County investigating officer. These facts are less compelling than *Lott, supra,* and certainly do not rise to the level of clearly and convincingly establishing that the appellant was not properly identified as a fugitive from justice, therefore, the trial judge could properly deny the writ.[7]

AFFIRMED.

---

7. Appellant also assigns as error the trial court's admission of the unsworn statement of a car rental agent, who did not appear at the hearing, which positively identified the appellant as the person who rented the vehicle on the dates in question. We need not address whether the rules of evidence and criminal procedure are applicable to extradition proceedings. *See Rivera v. State,* 19 Ark.App. 100, 717 S.W.2d 493 (1986), (unsworn statement of absent witness admissible as neither rules of evidence nor rules of criminal procedure apply in extradition proceedings). *Accord, Mahan v. Greene,* 211 Neb. 671, 672, 319 N.W.2d 760 (1982); *Shapiro v. Ferrandina,* 478 F.2d 894 (2d Cir.1973), *cert.* *dism'd,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973); *Collins v. Loisel,* 259 U.S. 309, 317, 42 S.Ct. 469, 472, 66 L.Ed. 956, 960 (1922). *Cf. State v. Whitt,* 753 S.W.2d 369, 370 (Tenn.Cr. App.1988), (rules of evidence are "not rigidly applied.") *Lott v. Bechtold, supra,* (hearsay evidence was used without discussion).

Assuming, arguendo, that the statement was erroneously considered in the proceeding, the error was harmless, as under *Lott,* the officer's affidavit, annexed to the rendition warrant and the evidence obtained from the rental agency pursuant to the search warrant, supported the trial judge's denial of the writ, since there was merely conflicting evidence.