457 S.E.2d 138

**STATE of West Virginia ex rel. Linda CORYELL, Petitioner Below, Appellant,**

v.

**Preston B. GOODEN, Sheriff of Berkeley County, and Debra L. Milard, Agent of the Governor of the State of Pennsylvania, Respondents Below, Appellees.**

No. 22355.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided March 27, 1995.

Robert C. Stone, Jr., Steven M. Askin, Askin, Burke & Shultz, Martinsburg, for appellant.

Pamela Games–Neely, Pros. Atty. for Berkeley County, Janet L. Scalia, Asst. Pros. Atty., Martinsburg, for appellee, Preston B. Gooden.

PER CURIAM:

This action is before this Court upon the appeal of Linda Coryell, the appellant and petitioner below, from a final order of the Circuit Court of Berkeley County denying her petition for a writ of habeas corpus.

Mrs. Coryell was seeking habeas corpus relief from her arrest and custody pursuant to a rendition warrant issued by the Governor of West Virginia in response to a request from the Governor of Pennsylvania for her extradition to that state for the crime of interference with custody of children. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the order of the circuit court is affirmed.

## I

Pursuant to an agreement dated July 26, 1982, William and Linda Coryell[1] agreed that Mrs. Coryell would be given custody of their two children.[2] The agreement, approved by the Court of Common Pleas of Susquehanna County, Pennsylvania, granted Mr. Coryell visitation privileges including "the right to have said children with him at his residence from Friday night, at 7 P.M. to the following Sunday at 7 P.M." and one

week during the summer, as well as "the right to visit the children at the residence of [Mrs. Coryell] on all holidays." On June 6, 1984, Mrs. Coryell's parents, Raymond and Doris Pringle, were granted custody of the children, by order of the Juvenile Court, Knox County, Tennessee. The record before us reveals little of the circumstances surrounding this change in custody.[3]

On November 24, 1987, a bench warrant was issued against Mrs. Coryell by the Court of Common Pleas of Susquehanna County, Pennsylvania, for failure to appear before the court pursuant to a petition for contempt filed by Mr. Coryell. Mr. Coryell alleged that Mrs. Coryell failed to comply with the aforementioned child custody and visitation agreement.

On October 13, 1988, Mr. Coryell filed a criminal complaint against Mrs. Coryell, in Pennsylvania, for violation of 18 Pa.Cons. Stat.Ann. § 2904 (1983), Interference with Custody of Children,[4] a felony in the third

---

1. It is unclear whether the couple is actually divorced. In her brief to this Court, Mrs. Coryell states that they were divorced in 1982 while Mr. Coryell contends that they were never divorced. Whatever the case, the couple's marital status is not germane to this opinion.

2. The children, a girl and a boy, are now aged 15 and 13, respectively.

3. According to the petition filed in Tennessee juvenile court, Mrs. Coryell had left the two children in the care of her parents, Mrs. and Mrs. Pringle, for six months. Mrs. Coryell had contacted neither her parents nor her children during that time. At the time the petition was filed, the whereabouts of both Mr. Coryell and Mrs. Coryell were unknown.

4. 18 Pa.Cons.Stat.Ann. § 2904 (1983) provides:
**Interference with custody of children.**
   (a) **Offense defined.**—A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so.
   (b) **Defenses.**—It is a defense that:
   (1) the actor believed that his action was necessary to preserve the child from danger to its welfare; or
   (2) the child, being at the time not less than 14 years old, was taken away at its own instigation without enticement and without purpose to commit a criminal offense with or against the child; or

   (3) the actor is the child's parent or guardian or other lawful custodian and is not acting contrary to an order entered by a court of competent jurisdiction.
   (c) **Grading.**—The offense is a misdemeanor of the second degree unless the actor, not being a parent or person in equivalent relation to the child, acted with knowledge that his conduct would cause serious alarm for the safety of the child, or in reckless disregard of a likelihood of causing such alarm, in which case the offense is a misdemeanor of the first degree.
The statute cited above was in effect in 1982, the date of the alleged offense. *See* discussion, *infra*. Subsection (c) was rewritten in 1984 and reads as follows:
   (c) **Grading.**—The offense is a felony of the third degree unless:
   (1) the actor, not being a parent or person in equivalent relation to the child, acted with knowledge that his conduct would cause serious alarm for the safety of the child, or in reckless disregard of a likelihood of causing such alarm. In such cases, the offense shall be a felony of the second degree; or
   (2) the actor acted with good cause for a period of time not in excess of 24 hours; and
   (i) the victim child is the subject of a valid order of custody issued by a court of this Commonwealth;
   (ii) the actor has been given either partial custody or visitation rights under said order; and
   (iii) the actor is a resident of this Commonwealth and does not remove the child from the Commonwealth.

degree. The criminal complaint states that on or about August 20, 1982, Mr. Coryell travelled to the Sunrise Lake Campgrounds in an attempt to pick up his children and to exercise his court-approved visitation rights. Mrs. Coryell had apparently taken up temporary residence at the campground. When Mr. Coryell arrived at the campground, he was, unwittingly, detained on the road by Mrs. Coryell's parents, Mr. and Mrs. Pringle, enabling Mrs. Coryell and her friend, Larry Meck, to drive away with the children. Because Mr. Coryell had neither seen nor heard from his children since that day in 1982, the criminal complaint alleged the date of the offense to be "1982 to present time."

On April 16, 1992, Mrs. Coryell was arrested in West Virginia on a fugitive warrant. She appeared before a Berkeley County magistrate and was subsequently incarcerated in the Eastern Regional Jail in lieu of $20,000 bond. Bond was later reduced to $5,000, which Mrs. Coryell paid, and she was released from jail.

On July 28, 1992, a Requisition of the Governor of Pennsylvania for the return of Mrs. Coryell, a fugitive charged with the crime of interfering with custody of children, was sent to the Honorable Gaston Caperton, Governor of the State of West Virginia, demanding that she be delivered to Detective Debra Milard, an appellee herein, for extradition to Pennsylvania. Accordingly, on July 29, 1992, Governor Caperton issued a Warrant of Rendition directing appellee Preston B. Gooden, Sheriff of Berkeley County, to deliver Mrs. Coryell to Detective Milard for extradition.

Pursuant to an agreement between Pamela Games–Neely, Assistant Prosecuting Attorney of Berkeley County, and Steven Askin,

Mrs. Coryell's attorney, Mrs. Coryell voluntarily appeared in Berkeley County Circuit Court, on August 27, 1992, where she was arraigned upon the charge that she was a fugitive from justice standing charged, in Pennsylvania, with the crime of interference with custody of children. Mrs. Coryell was subsequently served with a Governor's Warrant from Governor Caperton demanding that she be returned to Pennsylvania. Not wishing to waive extradition, Mrs. Coryell requested leave to file a writ of habeas corpus pursuant to *W.Va.Code*, 5–1–9(a) [1937]. The circuit court granted Mrs. Coryell's motion.

On September 30, 1992, Mrs. Coryell filed a petition for a writ of habeas corpus in Berkeley County Circuit Court. Following the hearing on Mrs. Coryell's petition, the circuit court ordered that she be extradited to Pennsylvania. It is from that order that Mrs. Coryell appeals.

## II

Article IV, section 2 of the *United States Constitution* provides the basis for the extradition of fugitives between the states:[5]

A Person charged in any State with Treason, Felony or other Crime who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

The United States Supreme Court has set forth limitations on the scope of inquiry which may be pursued by a circuit court in an extradition proceeding.[6] In *Michigan v.*

---

In such cases, the offense shall be a misdemeanor of the second degree.
18 Pa.Cons.Stat.Ann. § 2904 (Supp.1994).

**5.** Though interstate extradition is primarily controlled by federal law, the extradition clause is generally implemented by consistent state laws which regulate and detail extradition procedures. *See generally* 31A Am.Jur.2d *Extradition* §§ 4 and 8 (1989). With some minor variations, West Virginia has adopted the Uniform Criminal Extradition Act. *W.Va.Code*, 5–1–7 to 5–1–13. *See Brightman v. Withrow*, 172 W.Va. 235, 304 S.E.2d 688 (1983).

**6.** The intent of the extradition clause is "to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed[,]" *State ex rel. Gonzales v. Wilt*, 163 W.Va. 270, 274, 256 S.E.2d 15, 17 (1979), thereby ensuring that no state becomes a sanctuary for fugitives from another's criminal justice system. *California v. Superior Court of California*, 482 U.S. 400, 406, 107 S.Ct. 2433, 2437, 96 L.Ed.2d 332, 339 (1987).

*Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521, 527 (1978), the Court stated:

> Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable.[7]

(footnote added). *See State ex rel Jones v. Warmuth,* 165 W.Va. 825, 829, 272 S.E.2d 446, 448 (1980); *State ex rel. Gonzales v. Wilt,* 163 W.Va. 270, 273–74, 256 S.E.2d 15, 17 (1979). *See also Cronauer v. State,* 174 W.Va. 91, 94, 322 S.E.2d 862, 865 (1984).

■ Similarly, this Court has previously enunciated the limited role of the asylum state in extradition matters. These limitations are correlative to those pronounced in *Doran.* As we stated in syllabus point 1 of *Wilt, supra:*

> 'In habeas corpus proceedings instituted to determine the validity of custody where petitioners are being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form; whether there is a criminal charge pending in the demanding state; whether the petitioner was present in the demanding state at the time the criminal offense was committed; and whether the petitioner is the person named in the extradition papers.' Point 2, Syllabus, *State ex rel. Mitchell v. Allen,* 155 W.Va. 530[, 185 S.E.2d 355] (1971).[8]

(footnote added). *See also* syllabus, *State ex rel. Drescher v. Hedrick,* 180 W.Va. 35, 375 S.E.2d 213 (1988); syl. pt. 1, *Cronauer, supra;* syl. pt. 2, *Wooten v. Hatfield,* 169 W.Va. 401, 287 S.E.2d 516 (1982).

Mrs. Coryell's first assignment of error on appeal concerns the third area of inquiry set forth by this Court initially in syllabus point 2 of *State ex rel. Mitchell v. Allen, supra:* whether she was present in the demanding state of Pennsylvania at the time the crime of interference with custody of children was allegedly committed. Mrs. Coryell contends that there was no "clear finding" of such presence and, accordingly, her petition for a writ of habeas corpus should have been granted.

At the July 6, 1993 hearing on Mrs. Coryell's petition for a writ of habeas corpus, Mr. Coryell testified that in August of 1982, the date he has alleged the crime of interference with custody of children was committed, he went to the campground in Pennsylvania where his children were residing with Mrs. Coryell to visit them pursuant to the court-approved child custody and visitation agreement. However, Mrs. Coryell drove away with the children before he could see them. Mr. Coryell's testimony was consistent with the criminal complaint which he signed in October of 1988 and which is discussed above.

Conversely, Mrs. Coryell contends that the testimony of her father, Raymond Pringle, clearly establishes that she was not in Pennsylvania in August of 1982 but was residing in Tennessee. Specifically, Mrs. Coryell refers to her father's statement that she was living in Tennessee in August of 1982 and that, though he and Mrs. Pringle were at the

---

7. The *Doran* court deemed a governor's grant of extradition "prima facie evidence that the constitutional and statutory requirements have been met[,]" and that once extradition has been granted, the issues that an asylum state may consider are limited to those articulated above. 439 U.S. at 289, 99 S.Ct. at 535, 58 L.Ed.2d at 527. The Court reasoned that "[t]o allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2." *Doran,* 439 U.S. at 290, 99 S.Ct. at 536, 58 L.Ed.2d at 528 (citations omitted).

8. Notwithstanding the differences in phrasing by the United States Supreme Court in *Doran* and by this Court initially in *Mitchell,* the scope of inquiry is essentially the same. *Warmuth,* 165 W.Va. at 830 n. 4, 272 S.E.2d at 448 n. 4. Specifically, "one clause of our formulation is 'whether the petitioner was present in the demanding state at the time the criminal offense was committed,' whereas the counterpart in the federal formulation states 'whether the petitioner is a fugitive.'" *Id.* (citations omitted). We concluded that "the difference in the West Virginia and the federal formulation is in reality only alternate expressions of the same points." *Id.*

Sunrise Lake Campgrounds in Pennsylvania, Mrs. Coryell was not. However, Mr. Pringle also testified that Mrs. Coryell moved from Pennsylvania to Tennessee sometime in 1982, but that he could not recall the exact date. Mr. Pringle conceded that it was possible that he was at the Pennsylvania campground in August of that year.

■ This Court has previously held that one accused of being a fugitive from justice must prove, by clear and convincing evidence, that he or she was not in the demanding state at the time the crime was committed in order to be released from custody. We reiterated this principle in syllabus point 2 of *Lott v. Bechtold,* 169 W.Va. 578, 289 S.E.2d 210 (1982):

> 'To be a "fugitive from justice," it is necessary that the person charged as such must have been actually present in the demanding state at the time of the commission of the crime, or, having been there, has then committed some overt act in furtherance of the crime subsequently consummated, and has departed to another jurisdiction. And, if the evidence be clear and convincing that the accused was not personally in the demanding state at the time of the commission of the offense charged, and has committed no prior overt act therein indicative of an intent to commit the crime, or which can be construed as a step in the furtherance of the crime afterwards consummated, he should be discharged.' Syl. pt. 2, *State ex rel. Blake v. Doeppe,* 97 W.Va. 203, 124 S.E. 667 (1924).

■ Mrs. Coryell's claim that she proved, by clear and convincing evidence, her absence from the demanding state of Pennsylvania in August of 1982, the alleged date of the crime charged, is without merit. As recounted above, the circuit court was presented with conflicting evidence on this issue. Mr. Coryell's testimony expressly placed Mrs. Coryell at the Pennsylvania campground in August of 1982. Mr. Pringle's testimony indicated, however, that, while he was at the campground, possibly in August of 1982, his daughter was not. Mr. Pringle's

testimony was, arguably, less definitive than Mr. Coryell's in that Mr. Pringle could not state with certainty when, in 1982, his daughter left Pennsylvania for Tennessee. What the record contains, then, is an obvious conflict as to Mrs. Coryell's whereabouts in August of 1982.

As the United States Supreme Court stated in *Munsey v. Clough,* 196 U.S. 364, 375, 25 S.Ct. 282, 285, 49 L.Ed. 515, 518 (1905):

> [T]he court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the State, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused.

*Accord South Carolina v. Bailey,* 289 U.S. 412, 421, 53 S.Ct. 667, 671, 77 L.Ed. 1292, 1297 (1933). We find, therefore, that Mrs. Coryell failed to successfully carry her burden of proving, by clear and convincing evidence, her absence from the demanding state of Pennsylvania at the time the alleged offense was committed.

Mrs. Coryell also contends that the evidence below was insufficient as to the date of the alleged offense. Specifically, she argues that the application for requisition to the Governor of Pennsylvania from the district attorney of Susquehanna, County did not indicate either the day or month in 1982 of the alleged offense.[9]

■ However, the Governor of Pennsylvania's requisition was not based solely upon the application for requisition. In syllabus point 2 of *Cronauer, supra,* we held:

> A rendition warrant issued by the Governor of this State under *W.Va.Code,* 5–1–8(a) [1937], in response to a request for extradition from the executive authority of a demanding state pursuant to the Uniform Criminal Extradition Act, *as amended, W.Va.Code,* 5–1–7 to 5–1–13, 'substantially recite[s] the facts necessary to the validity of its issuance' with respect to the

---

9. The application for requisition states that Mrs. Coryell stands charged "with the crime of *Interference with Custody of Children* committed in the

County of *Susquehanna* Commonwealth of Pennsylvania, on or about the ____ day of ____, 19__."

crime charged therein, as required by *W.Va.Code*, 5–1–8(a) [1937], if the rendition warrant contains a statement that gives the person sought to be extradited reasonable notice of the nature of the crime charged in the demanding state; and a circuit court, when determining the sufficiency of a rendition warrant in a habeas corpus proceeding challenging the validity of custody in connection with extradition proceedings, may examine underlying documents filed by the demanding state in support of its request for extradition.

Among the underlying documents that accompanied the rendition warrant and were part of the record considered by the circuit court during the habeas corpus proceeding were the requisition for extradition from the Governor of Pennsylvania; the application for said requisition from the district attorney of Susquehanna County, Pennsylvania; a copy of the criminal complaint filed by Mr. Coryell against Mrs. Coryell and certified by District Justice Peter Janicelli in Susquehanna County, Pennsylvania; a warrant issued by District Justice Janicelli for the arrest of Mrs. Coryell; [10] and the child custody and visitation agreement entered in the Court of Common Pleas of Susquehanna, County on July 27, 1982.

■ Though the application for requisition indicates the alleged crime was committed in 1982 and is silent as to the specific day and month, the underlying criminal complaint, dated October 13, 1988, states that Mrs. Coryell violated the penal laws of Pennsylvania on or about "1982 to present time." Moreover, the complaint details Mr. Coryell's at-tempt to visit his children in Pennsylvania on or about August 20, 1982 and Mrs. Coryell's simultaneous flight with the children in tow. The complaint was verified by Mr. Coryell before Susquehanna County District Justice Janicelli, who found the complaint to be properly completed and probable cause for issuance of process to exist.

The rendition warrant issued by Governor Caperton stated that Mrs. Coryell "stands charged with the crime of Interference with Custody of Children" committed in Pennsylvania. We believe that this statement substantially recites the facts necessary to the validity of the issuance of the rendition warrant as required by *W.Va.Code*, 5–1–8(a) (1937) [11] as it gave reasonable notice to Mrs. Coryell of the nature of the crime with which she is charged in Pennsylvania.[12] Furthermore, the circuit court clearly examined the underlying documents in addition to the requisition from the Governor of Pennsylvania and, accordingly, determined that they constituted a valid basis for issuing a rendition warrant.

### III

Mrs. Coryell's second assignment of error suggests that Governor Caperton improperly considered the November 24, 1987 bench warrant against her in his decision to issue the rendition warrant. As indicated above, the bench warrant was issued against Mrs. Coryell by the Court of Common Pleas of Susquehanna County, Pennsylvania for failure to appear pursuant to a petition for civil contempt filed by Mr. Coryell. Mr. Coryell

10. According to the testimony of Detective Milard, in Pennsylvania, the criminal complaint and warrant are contained in the same document.

11. *W.Va.Code*, 5–1–8 [1937], Governor's warrant of arrest, provides, in relevant part:

> (a) If the governor decides that the demand should be complied with, he shall sign a warrant of arrest which shall be sealed by the secretary of state with the great seal of this state, and be directed by the governor to any peace officer or other person whom he may think fit to entrust with the execution thereof. The warrant must substantially recite the facts necessary to the validity of its issuance.

12. In *Cronauer*, 174 W.Va. at 96, 322 S.E.2d at 867–68, we recounted numerous cases in which courts upheld the validity of rendition warrants upon the determination that the warrants gave the accused reasonable notice of the nature of the crime charged. *See, e.g., Griggs v. State*, 481 P.2d 388 (Alaska 1971) (rendition warrant charging the accused with "robbery" was sufficient even though the accused was wanted for parole violations of previous robbery conviction); *Ex parte Chapman*, 435 S.W.2d 529 (Tex.Crim.App. 1968) (rendition warrant charging accused with "child desertion" held to be substantial recitation of facts); *Ex parte Hagar*, 434 S.W.2d 675 (Tex. Crim.App.1968) (rendition warrant charging accused with "child abandonment" held to be substantial recitation of facts).

alleged that Mrs. Coryell failed to comply with the child custody and visitation agreement made between the parties. Mrs. Coryell contends that, in that this warrant was included among the documents presented to Governor Caperton, it may have influenced his decision to order her extradition. Thus, she requests that the matter be remanded to the governor for reconsideration.

*W.Va.Code*, 5–1–7(b) [1937], provides, in relevant part, that it is

> "the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state ... any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state: Provided, That the demand or application of ... the executive authority of such other state is made in good faith for the punishment of crime[.]"

*W.Va.Code*, 5–1–7(c) [1937] requires that the demanding state allege, in writing, that the accused was present in the demanding state at the time the crime was committed, that he then fled from the State, accompanied by, in this case, "a copy of an affidavit made before a magistrate or justice there, together with a copy of any warrant which was issued thereupon[.]" This affidavit must "substantially charge the person demanded with having committed a crime under the law of that state[.]" *Id.*

■ As previously discussed, Governor Caperton was presented with a certified copy of the *criminal* complaint filed by Mr. Coryell which indicates that Mrs. Coryell is charged with violating 18 Pa.Cons.Stat.Ann. § 2904 (1983), Interference with Custody of Children; a copy of the text of 18 Pa.Cons. Stat.Ann. § 2904 (1983); and the requisition from the Governor of Pennsylvania and the application therefor, both of which state that Mrs. Coryell stands charged with the crime of "Interference with Custody of Children." Finally, the rendition warrant issued by Governor Caperton states that the charge against Mrs. Coryell is that of interference with custody of children.

■ As we stated in syllabus point 2 of *State ex rel. Staley v. County Court*, 137

W.Va. 431, 73 S.E.2d 827 (1952), "[i]n the absence of evidence to the contrary public officers will be presumed to have properly performed their duties and not to have acted illegally, but regularly and in a lawful manner." *See* Syl. pt. 3, *Brammer v. Human Rights Comm'n*, 183 W.Va. 108, 394 S.E.2d 340 (1990). Extradition may only be sought and ordered upon the commission of a *crime.* The supporting documents clearly stated that the offense for which extradition was sought was criminal in nature. The mere fact that the November 24, 1987 bench warrant, issued for a civil contempt charge, was, inexplicably, among the documents presented to Governor Caperton is simply not sufficient evidence to overcome the presumption that Governor Caperton properly ordered Mrs. Coryell's extradition to Pennsylvania.

■ In addition, Mrs. Coryell asserts that, because the penal law at issue, 18 Pa. Cons.Stat.Ann. § 2904 (1983), Interference with Custody of Children, was amended in 1984, two years after the initial offense, Governor Caperton may have had insufficient evidence to determine which law was applicable to this case. Apparently, Governor Caperton was presented with a copy of the amended statute and not the version in effect in 1982.

Mrs. Coryell refers to the portion of appellee Detective Debra Milard's testimony in which she is unable to identify which portion of 18 Pa.Cons.Stat.Ann. § 2904 (1983) had been amended. Mrs. Coryell fails to acknowledge, however, that Detective Milard subsequently states, *under cross-examination by Mrs. Coryell's attorney*, that only subsection (c), concerning the grading of the offense, was modified in 1984. *See* n. 4, *supra.* Governor Caperton acted within his authority in ordering Mrs. Coryell's extradition to Pennsylvania. Mrs. Coryell's suggestion that Governor Caperton may have been under some misapprehension as to the grading of the offense is merely another way of requesting that her guilt or innocence be determined by the asylum state.

### IV

In her final assignment of error, Mrs. Coryell argues that the circuit court should only

have denied her petition for a writ of habeas corpus on the condition that the State of Pennsylvania agree not to prosecute her on the November 24, 1987 bench warrant. Specifically, Mrs. Coryell asks this Court to adopt the Doctrine of Specialty, a principle of international extradition requiring that one who is extradited be tried in the demanding state only upon the charge for which extradition was granted. *See* 18 U.S.C. § 3186 (1988).

As previously discussed, in habeas corpus proceedings instituted to determine the validity of custody where an accused is being held in connection with extradition proceedings, the asylum state is limited to considering whether the extradition papers are in proper form, whether there is a criminal charge pending in the demanding state, whether the accused was present in the demanding state at the time the criminal offense was committed, and whether the petitioner is the person named in the extradition papers. Syl. pt. 1, *Wilt, supra;* syl. pt. 2, *Allen, supra.* We have already determined that the circuit court properly resolved these inquiries and, accordingly, denied Mrs. Coryell's petition for a writ of habeas corpus.

Mrs. Coryell's request that this Court adopt a principle of international extradition is misplaced, as "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]" *State v. General Daniel Morgan Post, No. 548, Veterans of Foreign Wars of the United States, a Corp.,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citations omitted). Thus, the legislature, and not this Court, is the proper entity to take up such a principle of extradition.[13]

For the reasons stated above, we affirm the order of the Circuit Court of Berkeley County, denying Mrs. Coryell's petition for a writ of habeas corpus.

Affirmed.

13. Mrs. Coryell briefly asserts that physical abuse inflicted upon her and her children by Mr. Coryell was the cause of her departure from Pennsylvania. She argues that a duress defense should be more fully explored by the Circuit Court of Berkeley County. As discussed in the text of this opinion, the asylum state's role is limited and does not include this type of inquiry. *See* syl. pt. 2, *Allen, supra.*

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.